■ In the Matter of the Claim of HELEN L. OWEN, Appellant, v. ONEIDA LIMITED et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent. — Appeal by claimant-widow from a decision of the Workmen's Compensation Board finding that the accident, which caused the death of Richard L. Owen, did not arise out of and in the course of employment and disallowing death benefits. Decedent was employed as a mechanical engineer specializing in the developing and tooling of jet propeller blades under a contract which his employer had with a division of General Motors. In the course of duties he was required to visit and place contracts with various tool-design firms throughout the State. On September 5, 1956 decedent was required to make such a trip to Vestal, New York. He had originally planned to take a company car for the trip but when one proved unavailable he drove his own car. Despite the fact that he did not leave till around noon he planned to return home that evening. What happened next is disputed. Robert Lewis, owner of a tool and design firm in Vestal, testified at the hearing in 1960 that he had previously requested that a member of the Oneida Limited sales staff visit his firm and that on September 5, 1956 decedent had called his office at 5:00 P.M. and suggested a meeting. Since the plant was closing down Lewis stated he suggested they meet at the Red Barn Restaurant in Vestal and decedent agreed. At the Red Barn Lewis and decedent had some drinks, ate dinner and discussed business until 8:30 P.M. when decedent left. The respondents' employer and its carrier take the position that decedent had no business connection with Lewis' firm and produced a signed statement by Lewis made 35 days after the accident in which Lewis stated he did not have any appointment to meet decedent at the Red Barn but had met him there by accident and that decedent had left at 9:30 P.M. rather than 8:30. That during the course of their conversation some business was discussed is not disputed. The record next reveals that at 10:00 P.M., as prearranged, decedent phoned his wife and told her that he had

been delayed because of his meeting with Lewis and that he was then "around Binghamton". Sometime between 11:30 and 12:45 decedent stopped at the Munnsville American Legion Club ostensibly to use the phone to call his wife. While at the Legion he had two drinks and engaged in conversation mostly social in nature with two Oneida plant employees who he happened to meet there. At 1:30 decedent and the two employees went to the Bar-B-Que Pit in Oneida Castle where they ate and drank coffee. Decedent left the Bar-B-Que Pit between 2:00 and 2:30 A.M. and was killed between 2:30 and 4:00 A.M. when his car crashed over an unguarded embankment some 4 miles from the Bar-B-Que Pit and 9 miles from his home on a course that would have taken him to his home. Mrs. Owen and her daughter testified that decedent phoned home around 2:00 A.M. and told them he had been at a friend's home for coffee, had stayed around an hour and was then near Oneida. If the widow is correct about the time of the call, decedent must have visited the friend's home for coffee before he went to the Legion. On this record a majority of the board has found that decedent's activities after leaving Vestal constituted "a substantial departure from normal procedure in accomplishing the business errand so that the business trip lost its identity as part of the decedent's employment" and that it was this pursuit of "personal activities" which created the peril that resulted in decedent's death. It is well settled that those activities which are purely personal pursuits are not within the scope of employment (e.g., *Matter of Pasquel* v. *Coverly*, 4 N Y 2d 28). The test as to whether a given activity engaged in by an employee sent away from home by his employer is within the ambit of the risk of employment is the reasonableness of such activity (*Matter of Davis* v. *Newsweek Mag.*, 305 N. Y. 20; *Matter of Fleer* v. *Glens Falls Ins. Co.*, 16 A D 2d 186; *Matter of Meredith* v. *United States Ind. Chem. Co.*, 14 A D 2d 955). This determination is one of fact to be decided on the particular facts of the case involved and thus one in which the board has "the utmost freedom in which way disputed facts are to be decided and need not necessarily be consistent" (*Matter of Dresher* [*Lubin*] 286 App. Div. 591, 594; cf. *Matter of Hickey* v. *Ardale Bldg. Corp.*, 15 A D 2d 837). Here considering the length of the trip involved, the conflicting testimony as to how decedent came to meet Lewis at the Red Barn, decedent's activities subsequent to his leaving the Red Barn and the time at which the accident occurred there is substantial evidence to support the board's finding. Decision unanimously affirmed, without costs. Present — Bergan, P. J., Gibson, Herlihy, Reynolds and Taylor, JJ.