GEORGE C. CALLOWAY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

SHEPPARDS AUTO SUPPLY COMPANY

(No. 14719)

Decided July 15, 1980.

*Harold S. Albertson Jr., Hall, Albertson & Jones* for appellant.

*Michael R. Crane, Boettner, Campbell & Crane,* for appellee.

MILLER, JUSTICE:

The claimant, George C. Calloway, asserts that the Workmen's Compensation Commissioner and the Appeal Board erred when they dismissed his claim as not having occurred within the course of his employment because of a substantial personal deviation from his employer's business. Mr. Calloway sought to recover for injuries resulting from a March 27, 1976, motor vehicle accident.

Mr. Calloway was employed as an outside salesman for Sheppards Auto Supply Company which, on the day in question, had sent Mr. Calloway and a fellow employee, David Worley, to Logan County to attempt to solicit new business. They traveled from the company's main office in Montgomery to Logan County in a company vehicle. At one of the hearings, Dale Sheppard, the company's general manager, outlined the purpose of the trip:

> "He was to go through the area making calls on these strip mines and the coal mines and essentially asking them for business and tell them what we can supply and the products we have and the service we can supply them in trying to drum up business."

The employer challenged the compensability of the claim, asserting that Mr. Calloway converted the trip into a personal, social visit and a beer-drinking escapade. To support its position, the company introduced the testimony of Mr. Worley, who testified that though the claimant made approximately ten stops during the trip, only one entailed promoting the intended business

purpose. He testified that during the morning of March 27 the claimant visited relatives, and that in the afternoon and evening he and Calloway drank beer in various local taverns. He stated that they left the Green Lantern tavern early in the evening and proceeded to another tavern located in Sandy Bottom, where they consumed more beer and played pool.

At approximately 11:00 p.m., Worley insisted that they start home. When the claimant refused, they had an argument. Worley went outside the tavern to the company truck, the claimant followed him and grabbed his shirt, and Worley struck the claimant, knocking him to the ground and rendering him unconscious. Worley took the truck keys, placed the claimant in the truck, and proceeded to start the return trip. The accident occurred a short time later.

Because of the rather severe head injuries he had received, the claimant did not have a detailed recollection of the events surrounding the trip. His witnesses consisted mainly of the relatives he had visited, and their testimony indicates that he may have asked some of them about possible business contacts in the area. It does not appear that any potential customer was actually contacted, except that during a stop at a filling station before noon, the claimant indicated that he asked the attendant if the station could use some auto supplies. He generally recalls drinking beer in several taverns and playing pool with Worley.

Workmen's compensation law generally recognizes that an employee is entitled to compensation for an injury received while traveling on behalf of his employer's business, as stated in 82 Am. Jur. 2d *Workmen's Compensation* § 250:

> "With respect to the compensability of injuries to employees, the performance of whose duties necessitates their traveling from place to place away from the premises of the employer, sustained while so traveling, as arising out of and in the course of the employment, the right to com-

pensation depends, as in other cases generally, upon whether the injury results from a risk which is inherent in the nature of the employment, or which is reasonably incidental thereto, or to which the employee is specially exposed, and upon whether the employee, at the time of the occurrence of the accident, was engaged in the exercise of some function or duty reasonably necessary or incidental to the performance of the contract of employment, or, if not actively engaged, whether he was at a place where he was authorized or required by such contract to be. It has been said that an employee who is away from home on a business trip for his employer is in most circumstances under continuous workmen's compensation coverage from the time he leaves until he returns home, although there are exceptions to this rule. The course of the employment of a traveling salesman, for the purposes of workmen's compensation, covers both the time and place of the traveling as well as of the selling of goods."

Where, however, the employee deviates from the employer's business, he may be denied compensation if the injury occurs during the deviation, unless the deviation is so slight that the business purpose is not interrupted. Once the employee ceases the deviation and returns to the employer's business, a subsequent injury is ordinarily compensable. This rule is summarized in 1 A. Larson, *The Law of Workmen's Compensation* § 19.00 (1978):

"An identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be disregarded as insubstantial."

In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose and consequently cannot recover for inju-

ries received, even though he has ceased the deviation and is returning to the business route or purpose. *See, e.g., True v. Longchamps, Inc.,* 171 Conn. 476, 370 A.2d 1018 (1976); *Central Air Conditioning Co. v. Garren,* 239 So.2d 497 (Fla. 1970); *Aaron v. Industrial Commission,* 59 Ill.2d 267, 319 N.E.2d 820 (1974); *Johnson v. McGehee Bros. Furniture Co.,* 256 So.2d 741 (La. App. 1971); *Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald,* 88 N.J. Super. 406, 212 A.2d 579 (1965); *Carter v. Burn Construction Co.,* 85 N.M. 27, 508 P.2d 1324 (Ct. App. 1973); *Owen v. Oneida, Ltd.,* 16 A.D.2d 1005, 229 N.Y.S.2d 325 (1962); *Alford v. Quality Chevrolet Co.,* 246 N.C. 214, 97 S.E.2d 869 (1957); *Scarpelli v. Workmen's Compensation Appeal Board,* 18 Pa. Cmwlth. 30, 333 A.2d 828 (1975), *cert. denied,* 423 U.S. 1077, 47 L. Ed. 2d 88, 96 S.Ct. 864 (1976).

The key is how the terms "major" and "deviation" are defined, and often courts do not address this point. It is apparent that a deviation can be determined only after the nature of the employment and the scope of the business trip are known. This involves an analysis of the employment relationship, the purpose of the trip, the employer's rules or instructions relating to the trip, as well as past practices, in order to determine the reasonableness of the employee's conduct as it relates to the employer's business.

A deviation generally consists of a personal or non-business-related activity. The longer the deviation exists in time or the greater it varies geographically from the normal business route or in purpose from the normal business objectives, the more likely that it will be characterized as major.

In *Carter v. Burn Construction Co., supra,* the employee was furnished a company truck. On the day in question he left work at 5:30 p.m. and stopped at a tavern for some four and one-half hours drinking beer with his fellow employees. On his way home the truck overturned and he was injured. In denying compensation, the court summarized the deviation rules:

"An employee, who while on a trip in the course of his employment, makes a minor deviation for personal reasons, is outside the scope of his employment during the deviation. However, once he returns to the route of the business trip he re-enters the scope of his employment and responsibility attaches. Lockwood v. Board of Trustees, Speedway Meth. Ch., 144 Ind.App. 430, 246 N.E.2d 774 (1969); Woodley v. Rossi, 152 Conn. 1, 202 A.2d 136 (1964). Very minor deviations are disregarded or considered as part of the employment agreement. Sullivan v. Rainbo Baking Company, 71 N.M. 9, 375 P.2d 326 (1962); Whitehurst v. Rainbo Baking Company, 70 N.M. 468, 374 P.2d 849 (1962). However, if in the course of a business trip an employee makes a major deviation, major because of its duration in time or because of its nature, or both, it can be said that as a matter of law he has abandoned his employment. Then, regardless if he returns to the route of the business trip, this does not in and of itself return him to the scope of employment and an injury occurring after this does not arise out of or in the course of his employment. Johnson v. McGehee Brothers Furniture Company, 256 So.2d 741 (La.App. 1972); Alford v. Quality Chevrolet Co., 246 N.C. 214, 97 S.E.2d 869 (1957); Dooley v. Smith's Transfer Co., 57 A.2d 554, 26 N.J.Misc. 129 (1948)." [85 N.M. at 30, 508 P.2d at 1327].

*Hebrank v. Parsons, Brinckerhoff, Hall & MacDonald,* *supra,* involved a survey crew whose work required them to stay overnight at a motel. After having dinner near the motel, they visited taverns and eventually ended in one about 25 miles away from the motel, where they stayed until 2:00 a.m. On their return to the motel, the driver lost control of the company station wagon and it crashed into a telephone pole, injuring the claimant. The court rejected the claim, characterizing the deviation as sufficiently major to be an abandonment of any business purpose.

In *True v. Longchamps, Inc., supra,* the manager of a restaurant was killed and his widow sought and was denied compensation benefits. The manager had a luncheon engagement with a prospective chef, which the court recognized as a valid business purpose even though the luncheon was at a local tavern. After the luncheon, during which the prospective chef declined the employment offer, the two went to a restaurant, had some drinks and discussed the restaurant business with the manager of that establishment. They left about 4:30 p.m., two hours after their luncheon engagement, and while driving away struck a utility pole. The court upheld the denial of benefits on the basis that the visit to the second establishment had no business connection.

Compensation was denied in *Central Air Conditioning Co. v. Garren, supra,* where an air conditioning serviceman had the use of the company truck and was on call 24 hours a day, although his normal working hours were from 8:00 a.m. to 4:30 p.m. He had finished work and had gone to a V.F.W. club, where he stayed until about 8:00 p.m. and then left with a friend. On his way home, which was the route he normally traveled from his place of employment, he was involved in an accident and received injuries. The court, in rejecting the claim, stated:

> "Claimant, when he met with his misfortune, was in no way pursuing the interest of his employer, had long since departed from the course of his employment, and his mishap, in no way, arose from a risk which was incidental to his employment. . . ." [239 So.2d at 498].

In *Alford v. Quality Chevrolet Co., supra,* a car salesman who had the use of a company vehicle and whose normal working hours ended at 7:00 p.m., left work with a fellow employee and had drinks and dinner at a restaurant. He then proceeded to visit several taverns. Some five hours later, while returning home, the car went off the highway and the employee was killed. In denying compensation, the court stated:

> "At the time of the fatal accident the employee cannot be said in any reasonable view of the

facts to have been on his way home from his employment. Actually he was on his way home from a night out. All reasonable time for travel home from work had expired before he returned to Monroe from Marshville at midnight. The record shows abandonment of employment rather than deviation from it." [246 N.C. at 217, 97 S.E.2d at 871].

We have not had occasion to consider this particular question in our workmen's compensation cases. We discussed the deviation rule in *Shapaka v. State Compensation Commissioner*, 146 W.Va. 319, 119 S.E.2d 821 (1961), and stated in Syllabus Point 1:

"If the conduct of an employee which results in his injury constitutes a departure from or an abandonment of his employment the injury is not compensable; but if such conduct constitutes a mere deviation which is slight and not substantial it does not remove the employee from the course of his employment and does not render his injury not compensable."

Shapaka was found to be guilty of only a minor deviation while at work. He had walked to a water fountain across some resilient wire mesh and injured himself in playfully attempting to spring into the air and make a full turn before landing.

In *Harris v. State Workmen's Compensation Commissioner*, 158 W.Va. 66, 208 S.E.2d 291 (1974), we recognized the general rule that an employee traveling to and from work in his private vehicle is not within the scope of his employment unless he is on some special errand for his employer. Deviation was not an issue in *Harris*.

In the present case, there is no dispute that the claimant was initially traveling on behalf of his employer in an attempt to solicit new business in the Logan County area. However, even under the facts liberally construed in his behalf, he had completed any company business in the midafternoon when he and his fellow employee began to frequent taverns. The continuation of this activi-

ty until 11:00 p.m. was a major deviation, not only in time but also in its nature. It can only be viewed as an abandonment of any business purpose.*

We, therefore, conclude that the Commissioner and the Appeal Board were not clearly wrong in denying compensability.

*Affirmed.*

---

\* We are cited cases involving salesmen whose normal business activity involved entertaining customers in the evenings and who were injured in accidents on the way home from such meetings. *E.g., Heeb v. Chrysler Credit Corp.*, 39 A.D.2d 987, 333 N.Y.S.2d 185 (1972); *Boyd v. Francis Ford, Inc.*, 12 Or. App. 26, 504 P.2d 1387 (1973). These cases are not applicable to claimant's role in the present case, since he had no entertainment account and no claim is made that in his position he was authorized or encouraged to entertain customers at the company's expense or was, in fact, entertaining customers through the various tavern stops on the day in question.