No. 72,501

DONALD LEO KINDEL (Deceased), *Appellee,* v. FERCO RENTAL, INC., and WAUSAU INSURANCE COMPANIES, *Appellants.*
(899 P.2d 1058)

Opinion filed August 4, 1995.

*John W. Mize*, of Clark, Mize & Linville, Chartered, of Salina, argued the cause and was on the brief for appellants.

*Robert G. German*, of Salina, argued the cause, and *James D. Sweet*, of Sweet & Sheahon, of Salina, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: A worker was killed on his return trip home from work. The worker's surviving spouse and minor children claimed death benefits. The Administrative Law Judge (ALJ) denied their claim, finding that the worker had abandoned his employment and therefore the accident did not arise out of and in the course of his

employment. On review, the Workers Compensation Board (the Board) reversed the ALJ, finding that the worker's death arose out of and in the course of his employment. The employer appealed. The case was transferred to this court from the Court of Appeals pursuant to K.S.A. 20-3018(c).

Donald L. Kindel was employed by Ferco Rental, Inc. (Ferco). On October 11, 1991, Kindel was transported in a company pickup truck from his home in Salina, Kansas, to a construction job site in Sabetha, Kansas. James Graham, Kindel's supervisor, was the driver of the truck. The company truck had been checked out to Graham to transport Kindel and other employees to and from the job site.

On the way to Sabetha, Graham and Kindel passed a former employee of Ferco. Kindel held up a note inviting the former co-worker to join them at the Outer Limits, a "striptease" bar adjacent to Interstate 70 on the west side of Topeka. At approximately 3:30 p.m., after completing the day's work at the job site in Sabetha, Graham and Kindel proceeded back toward Salina. On the way, the two men stopped at the Outer Limits for approximately four hours, where they became inebriated.

Graham suffers from amnesia and cannot recall any of the events occurring after they stopped at the Outer Limits. Graham testified, however, that it was Kindel's idea to stop at the Outer Limits; that Kindel made the arrangements to meet the former co-worker at the Outer Limits after work that day; and that if Kindel would have wanted to proceed straight home, Graham would have done so.

At approximately 8:50 p.m., the Kansas Highway Patrol received a call of a motor vehicle accident on Interstate 70 near mile marker 337. When Trooper McCool arrived at the accident scene, he observed the Ferco truck overturned and lying in the south ditch of the westbound lane near an entrance to a rest area. Graham, who was driving, and Kindel had been partially ejected out of the truck's windshield. Kindel was deceased. Subsequent tests determined that Graham and Kindel had blood alcohol levels of .225 and .26, respectively.

Prior to the accident, Graham and Kindel were aware that Ferco had a policy that, except to obtain food or fuel, company vehicles

were to be used only to go directly from the shop to the job site. Company vehicles were not to be used for personal pleasure or business. Ferco had a comprehensive drug and alcohol policy in place at the time of the accident which, among other things, prohibited workers from using the company equipment while under the influence of alcohol. Employees were not authorized to use a company vehicle to stop at a bar to consume alcohol. Kindel signed off on this policy on December 8, 1990. The employer asserted that when the employees stopped at the bar, authorization to use the company vehicle ceased and any further use of the company vehicle was not part of their employment.

At the time of the accident on October 11, 1991, Graham possessed a valid Kansas driver's license. Ferco was aware of Graham's propensity for drinking and driving. Graham had been charged with DUI some six days prior to this incident and had a previous conviction for which he had had his driver's license suspended. Graham understood that he was prohibited from drinking while using company equipment. Graham testified that the reason for stopping at the Outer Limits was to pursue pleasure and to have a good time. He said it was his understanding that when he pulled up at the Outer Limits, his work was over for the day.

Kindel's surviving spouse and minor children filed a workers compensation claim, seeking death benefits pursuant to K.S.A. 1991 Supp. 44-510b. The ALJ found

"that the deviation was so substantial and there is not a causal connection between the deviation and the purpose of employment, nor a causal nexus between the resulting accident and death as to say that the claimant had ever returned to the scope of his employment. . . . The subsequent death, therefore, did not arise out of and in the course of his employment."

The ALJ made no findings as to whether Kindel's death resulted substantially from his intoxication. The claimants appealed.

After reviewing the record, the Board reached the opposite conclusion, finding that Kindel's death arose out of and in the course of his employment. The Board acknowledged case law from other jurisdictions supporting the ALJ's decision, but found case law supporting a finding of compensability to be more persuasive. The Board first noted that Kindel's trip to and from Sabetha, absent

the detour, would have been considered a part of his employment. The Board stated that even if it assumed that the deviation from employment increased the risk of injury, the injury and resulting death resulted from the combined personal and work-related risks. The Board concluded that, under Kansas law, the increased risk attributable to the deviation did not, by itself, bar recovery. The Board observed:

"The [Kansas Workers Compensation] Act is to be liberally construed to bring both employees and employers within the coverage of the act. K.S.A. 44-501(g). The fact that claimant had been drinking and even the type of bar may be emotionally charged factors. This is especially so in this case where respondent had a clear policy against drinking while driving company vehicles. Nevertheless, the activities of claimant during the deviation from employment do not have any real relevance to whether the accident which occurred after claimant returned to the route home in the company vehicle occurred in the course of employment. Had claimant and his supervisor stopped for the evening, spent the night at a motel and returned the next morning, an accident on the route home would likely have been considered compensable. The only difference here is the nature of the activity during the deviation from employment.

"The Appeals Board does not consider the nature of the activity, *i.e.*, the drinking at a topless bar, to be determinative. The Kansas Workers Compensation Act is generally a no fault system. With the exception of certain specific defenses, *e.g.*, refusal to use a safety guard or injury caused by the claimant's intoxication, the fault of the claimant is not relevant to compensability. Second, the specific factor, *i.e.*, drinking, is already addressed by statute. See K.S.A. 44-501(d). The statute specifies the circumstances where intoxication acts to bar recovery. It would be [an] inappropriate expansion of that statute if claimant's drinking were the sole factor taking the injury out of the scope of employment.

"When reduced to the essential relevant facts, this case is not materially different from any other where a claimant deviates from his employment but has returned at the time of the accident. The Appeals Board therefore finds that claimant's death arose out of and in the course of his employment."

The Board reversed the decision of the ALJ and remanded the case for a determination of the appropriate benefits. The employer appealed.

The employer contends that when Graham and Kindel stopped at the Outer Limits, they abandoned their employment and the subsequent accident which caused the worker's death is not compensable. The claimants assert that Kindel's activity during the deviation is irrelevant because he was not killed during the deviation.

The claimants argue there is substantial competent evidence to support the finding of the Board that Kindel's death arose out of and in the course of his employment.

## Standard of Review

K.S.A. 1991 Supp. 44-556(a), defining the standard of review of the district court under the pre-Board system, states that "[s]uch review shall be upon questions of law and fact." Review of the Board's decision is now by the appellate courts in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq*. See L. 1995, ch. 1, § 3.

Under K.S.A. 77-621, appellate review is explicitly limited to questions of law. That statute states, in relevant part:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole . . . ; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

## Arising out of and in the Course of Employment

Although K.S.A. 1991 Supp. 44-508(f), a codification of the long-standing "going and coming" rule, provides that injuries occurring while traveling to and from employment are generally not compensable, there is an exception which applies when travel upon the public roadways is an integral or necessary part of the employment. See *Blair v. Shaw*, 171 Kan. 524, 233 P.2d 731 (1951); *Messenger v. Sage Drilling Co.*, 9 Kan. App. 2d 435, 437, 680 P.2d 556, *rev. denied* 235 Kan. 1042 (1984). Because Kindel and other Ferco employees were expected to live out of town during the work weeks, and transportation to and from the remote site was in a company vehicle driven by a supervisor, this case falls within the exception to the general rule.

In any employment to which workers compensation laws apply, an employer is liable to pay compensation to an employee where

the employee incurs personal injury by accident arising out of and in the course of employment. K.S.A. 1991 Supp. 44-501(a). Whether an accident arises out of and in the course of the worker's employment depends upon the facts peculiar to the particular case.

The two phrases arising "out of" and "in the course of" employment, as used in our Workers Compensation Act, K.S.A. 44-501 *et seq.*, have separate and distinct meanings; they are conjunctive, and each condition must exist before compensation is allowable. The phrase "out of" employment points to the cause or origin of the accident and requires some causal connection between the accidental injury and the employment. An injury arises "out of" employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Thus, an injury arises "out of" employment if it arises out of the nature, conditions, obligations, and incidents of the employment. The phrase "in the course of" employment relates to the time, place, and circumstances under which the accident occurred and means the injury happened while the worker was at work in the employer's service. *Hormann v. New Hampshire Ins. Co.*, 236 Kan. 190, 198-99, 689 P.2d 837 (1984); *Newman v. Bennett*, 212 Kan. 562, 512 P.2d 497 (1973).

Both the ALJ and the Board acknowledge the separate considerations inherent in the determination whether the death arose "out of" and "in the course of" employment. The ALJ concluded that the length of time Kindel spent at the Outer Limits and his substantial consumption of alcohol removed his subsequent activity from arising "in the course of" his employment, notwithstanding the fact he was on his homeward route at the time of the accident. The Board, on the other hand, determined that Kindel's injury and death resulted from combined risks attributable to his personal deviation *and* his employment, and held that the increased risk factor attributable to the deviation should not bar recovery. The point of disagreement between the ALJ and Board is whether the deviation was so substantial as to permanently remove the worker from the course of his employment, even though he later continued

his homeward route. The parties cite various cases for support of their respective positions.

Two Kansas cases address a somewhat similar situation and determined whether the worker had abandoned his employer's business. They are *Angleton v. Starkan, Inc.*, 250 Kan. 711, 828 P.2d 933 (1992), and *Woodring v. United Sash & Door Co.*, 152 Kan. 413, 103 P.2d 837 (1940). In *Angleton,* the widow and surviving children filed workers compensation claims against the employer following Angleton's death. Angleton, who was employed as a truck driver for Starkan, was hauling a load of cattle when a pair of hijackers began following him in another truck. By conversation over the citizens band radio, one of the hijackers persuaded Angleton to pull off the highway to smoke marijuana. Angleton stopped his truck and got into the hijackers' truck. While Angleton was smoking a marijuana cigarette, one of the hijackers shot and killed him. An ALJ denied all claimants' requests for compensation for failure to prove that Angleton's death arose out of and in the course of his employment. On review, the assistant director found that Angleton's fatal injury arose out of and in the course of his employment and awarded compensation to the surviving minor children and funeral expenses, but denied compensation to Angleton's widow on the basis she had failed to file her claim in a timely manner. The widow petitioned the district court for review of the assistant director's order. The district court affirmed. The widow appealed.

On appeal, the employer argued that Angleton's death did not arise out of and in the course of his employment because Angleton was smoking marijuana in another vehicle at the time of his death. The *Angleton* court first determined that absent the alleged marijuana episode, the accident occurred in the course of Angleton's employment. The court noted that at the time of his death, Angleton was en route to deliver his load of cattle to a feedlot on the route designated by his employer and that at the time Angleton pulled off the highway, he was driving his load in fulfillment of his employment obligations. The court further observed that Angleton was killed because he was responsible for the Starkan truck and cattle and his employment for Starkan transporting valuable cargo

exposed him to an increased risk of injury of being robbed while on the highway. 250 Kan. at 718.

The *Angleton* court then examined whether the alleged use of marijuana changed the district court's conclusion that the accident resulting in Angleton's death arose out of and in the course of his employment. The district court had noted that the only testimony that Angleton pulled off the highway to smoke marijuana was the testimony by one of the hijackers and found that testimony to be inherently unreliable. The *Angleton* court pointed out that on appeal it was required to view the evidence in the light most favorable to the prevailing party. It noted that if the district court's findings of fact are supported by substantial competent evidence, an appellate court is bound by those findings. The court noted that on appeal its jurisdiction was limited to review of questions of law, citing *Craig v. Electrolux Corporation*, 212 Kan. 75, 77, 510 P.2d 138 (1973); and *Jones v. City of Dodge City*, 194 Kan. 777, 779, 402 P.2d 108 (1965). The *Angleton* court noted that the courts, district and appellate, are to liberally construe the workers compensation statutes " 'to effect legislative intent and award compensation to the worker where it is reasonably possible to do so.' " 250 Kan. at 716 (quoting *Poole v. Earp Meat Co.*, 242 Kan. 638, 643, 750 P.2d 1000 [1988]). The *Angleton* court determined that the record supported the district court's finding that the hijacker's testimony was unreliable and held that the testimony was not sufficient or reliable to support a finding that the worker's conduct constituted a deviation from his employment. The court found that Angleton's death arose in the course of and out of his employment. 250 Kan. at 720.

In *Woodring v. United Sash & Door Co.*, 152 Kan. 413, the claimant was a traveling salesman who lived in Salina. Woodring was sent by his employer to meet a client in Enterprise, Kansas, to further the employer's business. Prior to arriving at Enterprise, the claimant went to Minneapolis, Kansas, and picked up three friends who made the journey to Enterprise with him. When the worker arrived at Enterprise, he discovered the man he was supposed to meet was in Abilene. The claimant made no further attempts to contact the client, and instead proceeded to a local drink-

ing establishment with his friends for "an hour or so" where he imbibed intoxicating liquor. Thereafter, while driving recklessly on his return journey to Salina, claimant was injured when his car overturned.

The compensation commissioner found that the claimant's injuries arose out of and in the course of his employment and entered an award of compensation on behalf of the claimant. The employer appealed to the district court. The district court reached the opposite conclusion, finding that because the claimant had abandoned his employer's business, the injury did not arise out of and in the course of his employment. Claimant appealed.

The *Woodring* court noted that it had little concern of the disputed questions of fact in ordinary lawsuits and none whatsoever in workers compensation cases except to ascertain whether the record contained any evidence which on any theory of credence or want of credence would justify the trial court's finding or conclusion of fact. The court stated that its responsibility was to determine questions of law.

The *Woodring* court then observed that where a business errand is the purpose of a worker's journey, the social incident of taking a few guests along for the pleasure of their company would not affect the worker's right to compensation for an injury sustained in the performance of that errand. The *Woodring* court noted that an intruding question was whether a worker, engaged in the employer's service, could be permitted to recover compensation for an injury sustained while operating an automobile on the public highway under the influence of intoxicating liquor in violation of a Kansas statute which made such an act a criminal offense punishable by fine or imprisonment or both. It found that because the district court had determined the business errand was finished or abandoned and that the worker had set about the pursuit of his own pleasure or indulgence, there was no theory of law or of justice which would impose on the employer the obligation to pay compensation for any injury sustained by the worker under such circumstances. 152 Kan. at 418.

The claimants rely heavily on *Angleton* and *Rainear v. Rainear*, 63 N.J. 276, 307 A.2d 72 (1973), for support of a finding of com-

pensability in this case. The claimants seek to distinguish *Woodring*, noting that Kindel was a passenger being driven home by his supervisor in a company vehicle and that the supervisor was required to return his employer's vehicle. The employer fails to address the *Angleton* precedent, but contends that the rationale of *Woodring* should be applied to this case. It is important to note that in *Angleton* and *Woodring* there were allegations that the worker was violating the law. Here, although Kindel was intoxicated, the fact he drank was not a violation of the law nor was he violating a law, at the time he was killed.

In support of their arguments, both parties cite numerous cases from outside of Kansas. The most favorable case for the employer is *Calloway v. Workmen's Comp.*, 165 W. Va. 432, 268 S.E.2d 132 (1980). In *Calloway*, the West Virginia Supreme Court found the claimant salesman's activity of drinking and tavern-hopping from midafternoon until 11 p.m. amounted to an abandonment of any business purpose such that the injuries he received in an accident shortly thereafter while being transported home were not compensable. The *Calloway* court acknowledged that workers compensation laws generally recognize that an employee is entitled to compensation for an injury received while travelling on behalf of his employer's business. 165 W. Va. at 434. The court noted that where an employee deviates from the employer's business, the employee may be denied compensation if the injury occurs during the deviation and that once the employee ceases the deviation and returns to the employer's business, a subsequent injury is ordinarily compensable. The court then observed:

"In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose and consequently cannot recover for injuries received, even though he has ceased the deviation and is returning to the business route or purpose. [Citations omitted.]

"The key is how the terms 'major' and 'deviation' are defined, and often courts do not address this point. It is apparent that a deviation can be determined only after the nature of the employment and the scope of the business trip are known. This involves an analysis of the employment relationship, the purpose of the trip, the employer's rules or instructions relating to the trip, as well as past practices,

in order to determine the reasonableness of the employee's conduct as it relates to the employer's business.

"A deviation generally consists of a personal or nonbusiness-related activity. The longer the deviation exits in time or the greater it varies from the normal business route or in purpose from the normal business objectives, the more likely that it will be characterized as major." 165 W. Va. at 435-36.

The *Calloway* court then reviewed a number of cases in which various courts have characterized an employee's deviations to be sufficiently major to deny compensation. 165 W. Va. at 436-39. The *Calloway* court concluded:

"In the present case, there is no dispute that the claimant was initially traveling on behalf of his employer in an attempt to solicit new business in the Logan County area. However, even under the facts liberally construed in his behalf, he had completed any company business in the midafternoon when he and his fellow employee began to frequent taverns. The continuation of this activity until 11:00 p.m. was a major deviation, not only in time but also in its nature. It can only be viewed as an abandonment of any business purpose." 165 W. Va. at 439-40.

The most favorable case for the claimants is *Rainear v. Rainear*, 63 N.J. 276. In *Rainear*, the New Jersey Supreme Court held that where an automobile accident had occurred while the decedent was on his way home from work along a proper and permissible route, decedent's 10-hour stop at a restaurant and bar to eat and drink did not amount to such a departure from the decedent's reasonable sphere of employment as to bar a compensation award. In that case, the decedent's travel expenses were being paid by his employer. There was nothing in the record to confirm that drinking caused the accident. 63 N.J. at 279. The *Rainear* court reviewed a number of cases awarding compensation to employees injured following a deviation. The court stated:

"There is nothing in the compensation law which fixes an arbitrary limit to the number of hours of deviation which may be terminated with travel coverage resumed. Thus if the decedent ate dinner at [the restaurant and bar] en route home and stayed there simply watching television for hours before continuing on his intended travel home, there clearly would be no rational basis for failing to apply the broad remedial principles embraced in [other New Jersey workers compensation cases]. While the fact that he also did some drinking there may have influenced the Appellate Division's negative result, the drinking really has no legal bearing here since there was no proof that the accident or death resulted from intoxication." 63 N.J. at 286-87.

A deviation from the employer's work generally consists of a personal or nonbusiness-related activity. The longer the deviation exists in time or the greater it varies from the normal business route or in purpose from the normal business objectives, the more likely that the deviation will be characterized as major. In the case of a major deviation from the business purpose, most courts will bar compensation recovery on the theory that the deviation is so substantial that the employee must be deemed to have abandoned any business purpose and consequently cannot recover for injuries received, even though he or she has ceased the deviation and is returning to the business route or purpose.

Is there substantial evidence to support the Board's finding of compensability, *i.e.*, that Kindel's death arose in the course of his employment? The employer provided transportation. Kindel was a passenger and not the driver. He was being transported home after completion of his duties. Despite approximately four hours at the Outer Limits, the distance of the deviation was less than one quarter of a mile. Kindel was killed after resuming the route home. Under the facts, even though the worker was intoxicated, as a passenger in his employer's vehicle, he was not committing a violation of Kansas law. Kindel was killed while engaging in an activity contemplated by his employer while traveling on a public interstate highway. The fact he had been drinking has no legal bearing on the present compensation determination since there was no proof that the accident or Kindel's death resulted from Kindel's intoxication.

The workers compensation statutes are to be liberally construed to effect legislative intent and award compensation where it is reasonably possible to do so. *Poole v. Earp Meat Co.*, 242 Kan. 638, 643, 750 P.2d 1000 (1988). We note that the workers compensation law does not fix an arbitrary limit on the number of hours of deviation, which may be terminated with travel coverage resumed. Whether there was a deviation, and if that deviation had terminated, is a question of fact to be determined by the administrative law judge or the Workers Compensation Board. Under our standard of review, we find that the Board did not act unreasonably, arbitrarily, or capriciously and there is substantial evidence to sup-

port the Board's conclusion that the fatal injury occurred in the course of Kindel's employment.

### Did Death Result Substantially From Intoxication?

K.S.A. 1991 Supp. 44-501(d) provides:

"If it is proved that the injury to the employee results . . . substantially from the employee's intoxication, any compensation in respect to that injury shall be disallowed."

Employer contends that Kindel's intoxication was a substantially causative factor in bringing about his death. Employer's argument can be summarized as follows: (1) Kindel had a blood alcohol concentration of .26; (2) Kindel would have been substantially impaired and incapable of acting in a manner in which an ordinarily prudent person would act; (3) under Kansas law, a passenger who has knowledge of a danger, and circumstances are such that an ordinary person would speak out or take other positive action to avoid injury, has the legal duty to take the action an ordinary prudent person would take under the circumstances (see *Ratterree v. Bartlett*, 238 Kan. 11, Syl. ¶ 5, 707 P.2d 1063 [1985]); (4) had Kindel exercised the degree of care required of him, he would have stayed out of the vehicle; and (5) because Kindel got into the vehicle after stopping at the Outer Limits, he was killed. The employer concludes that under these circumstances Kindel's death substantially resulted from his own intoxication, thereby barring a workers compensation claim for death benefits. Claimants respond that Graham, not Kindel, was driving the employer's truck at the time of the accident and Kindel's intoxication did not cause the accident or his death.

To defeat a workers compensation claim based on the worker's intoxication, an employer must prove not only that the worker was intoxicated, but also that such intoxication was the substantial cause of the injury. The presumption of intoxication provided for under the Kansas criminal statute is inapplicable in workers compensation cases. Evidence of the blood alcohol concentration of a workers compensation claimant is relevant to the issue of the cause of the accident in which the claimant is injured but does not give rise to a presumption of intoxication. *Poole v. Earp Meat Co.*, 242 Kan.

638, Syl. ¶¶ 4, 5. For an in-depth discussion of intoxication as it relates to workers compensation, see 1A Larson's Workmen's Compensation Law § 34 (1995).

The ALJ did not address the issue of intoxication. On appeal, the Board noted that Graham was driving, not Kindel, and that K.S.A. 1991 Supp. 44-501(d) expressly requires that the intoxication of the *claimant* be shown as the cause of the injury before compensation is disallowed. The Board noted that it was the driver's intoxication, not the worker's, that caused the fatal accident. The Board concluded it would require "speculation beyond the reasonable inferences from the evidence" to conclude that Kindel's own intoxication was a substantial cause of the accident.

To this court, the employer asserts that Kansas courts have recognized that a passenger owes a duty to exercise that care which a reasonably careful person would use for his or her own protection under the existing circumstances. See *McGlothin v. Wiles*, 207 Kan. 718, Syl. ¶ 1, 487 P.2d 533 (1971). Under tort law, a passenger can only be liable for negligence in two situations: (1) where there was a failure to use due care for his or her own safety as a passenger in the automobile and (2) under a joint enterprise or when the passenger and driver had a special relationship which created some duty where the negligence of the driver would be imputed to the passenger. *Akins v. Hamblin*, 237 Kan. 742, Syl. ¶ 2, 703 P.2d 771 (1985).

Common-law defenses to tort theories of negligence do not apply to workers compensation claims. K.S.A. 44-545 provides that it *shall be a defense* for an employer

"in all cases where said employee *has elected not to come within the provisions of the workmen's compensation act . . .* : (a) That the employee either expressly or impliedly assumed the risk of the hazard complained of; (b) that the injury or death was caused in whole or in part by the want of due care of a fellow servant; or (c) that said employee was guilty of contributory negligence: *Provided,* That none of these defenses shall be available where the injury was caused by the willful negligence of such employer, or of any managing officer or of managing agent of said employer."

Because Kindel was covered by workers compensation, these defenses are not available to the employer; therefore, Kindel had no common-law duty as a passenger.

In addition, the employer failed to prove that Kindel's intoxication was a substantial cause of the injury. The testimony of Trooper McCool was that the alcohol level of the driver was a substantial cause of the accident. Neither the ALJ nor the Board concluded that the accident substantially resulted from Kindel's intoxication. The fact that Kindel was a passenger, and not the driver, defeats the employer's claim. The Board properly found that the employer's attempt to prove Kindel's intoxication caused the accident requires "speculation beyond the reasonable inferences from the evidence." In essence, the employer asks this court to make a factual finding in the absence of any such finding by the Board. Because our review is limited to questions of law, we are required to decline this request.

### Failure to Follow Safety Policies

The employer asserts that Kindel's claim should be denied because he was violating known and established safety policies by consuming alcohol and utilizing company equipment while under the influence of alcohol. The claimants respond that the employer's argument improperly centers on the nature of the activity involved in the deviation and asserts that analysis has no application to the facts of this case.

The employer first asserted this argument before the ALJ. The ALJ, in his factual findings, noted that "[t]he respondent/employer, Ferco Rental, had a strict alcohol and drug policy . . . . There is little dispute that Mr. Graham and Mr. Kindel were aware of the alcohol/drug policy." No further mention is made of Ferco's company policies in the text of the ALJ's opinion. The Board, in its opinion, states:

"The fact that claimant had been drinking and even the type of bar may be emotionally charged factors. This is especially so in this case where respondent had a clear policy against drinking while driving company vehicles. Nevertheless, the activities of claimant during the deviation from employment do not have any real relevance to whether the accident which occurred after claimant returned to the route home in the company vehicle occurred in the course of employment."

The employer fails to point out what particular provisions of the statutes were violated. In addition, the employer cites K.S.A. 1991

Supp. 44-501(d) as authority, but fails to specify why that statute disallows compensation. The case law and authority that are cited by the employer are directed to whether an injury can properly be said to arise "in the course of" employment, as opposed to whether a violation of company policy bars compensation. See *Hoover v. Ehrsam Co.*, 218 Kan. 662, 544 P.2d 1366 (1976); 1A Larson's Workmen's Compensation Law §§ 31.00, 31.12 (1995). The employer has failed to show that compensation should have been disallowed under 44-501(d).

Affirmed.