686 S.E.2d 9

**Jean S. WILLIBY, Appellant**

v.

**WEST VIRGINIA OFFICE INSURANCE COMMISSIONER and First Century Bank, Appellees.**

**No. 34455.**

Supreme Court of Appeals of
West Virginia.

Submitted: Oct. 6, 2009.

Decided: Nov. 2, 2009.

Gregory S. Prudich, Esq., Sanders, Austin, Flanigan & Flanigan, Princeton, WV, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, David L. Stuart, Esq., Senior Deputy Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Workers' Compensation Board of Review (hereinafter, the "BOR")[1] entered January 17, 2007. In that order, the BOR reversed the decisions of the Office of Judges (hereinafter, the "OOJ") and the Workers' Compensation Commission (hereinafter, the "Commission")[2] which found the claim of the appellant, Jenny S. Williby, to be compensable. The appellant was injured in a fall that occurred while she was crossing the street to return to her place of employment after picking up her lunch during a work break. The BOR concluded that the appellant's injury did not occur in the course of and as a result of her employment. In this appeal, the appellant contends that the BOR erred by reversing the decisions of the OOJ and the Commission, and maintains that her claim should have been held compensable. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, this Court finds that the BOR did not commit reversible error and accordingly, affirms the decision below.

## I.

### FACTS

The appellant is a loan clerk at First Century Bank (hereinafter, the "bank" or the "employer") located in Bluefield, West Virginia. She is a salaried employee at the bank and works thirty-nine-and-one-half hours per week. Employees of the bank are required to record their time by punching a time clock. The appellant receives two fifteen-minute paid breaks per day, during which she is not required to punch out on the time clock. She also has an unpaid thirty-minute lunch period from 12:30 p.m. until 1:00 p.m. and is required to punch out on the time clock during that time.

On September 3, 2004, at 11:50 a.m., the appellant was injured during her first fifteen minute break of the day. It was a holiday weekend, and the appellant maintains that the bank was understaffed, causing her to be

---

1. This Court notes that the BOR was previously identified as the Workers' Compensation Appeal Board, with the change in name becoming effective on January 31, 2004. *See* W.Va.Code § 23–5–11 (2005); *State ex rel. Darling v. McGraw*, 220 W.Va. 322, 324, n. 2, 647 S.E.2d 758, 760 n. 2 (2007).

2. Pursuant to W.Va.Code §§ 23–2C–1 to –24, the Workers' Compensation Commission was abolished on January 1, 2006, and was succeeded by BrickStreet Mutual Insurance Company, a private employer mutual insurance company. All workers' compensation claims with dates of injury or last exposure before July 1, 2005, are payable from what is statutorily referred to as the "Old Fund" which is regulated by the Insurance Commissioner, the real party-in-interest here. The use of "Commission" in this opinion refers to both the predecessor, the Workers' Compensation Commission, and the successor, the Insurance Commissioner.

late in taking her break. When she did take her break, she used it to go across the street to the Manor Market to pick up her lunch. As the appellant was crossing the street to return to the bank, she fell in the middle of the road on uneven pavement and injured her shoulder. She then returned to the bank and was taken to Bluefield Regional Medical Center, which determined that she had sustained a right shoulder fracture, facial abrasions, and cephalgia (a headache).

The appellant's initial treatment plan was to use a shoulder immobilizer. She was then released from the hospital and instructed to follow-up with Dr. Stephen O'Saile. Thereafter, Dr. O'Saile had the appellant evaluated by MRI [3] to determine if she had a rotator cuff tear. A November 9, 2004, MRI revealed a supraspinatus tear at the insertion point with the intact biceps tendon. On November 17, 2004, Dr. O'Saile performed a rotator cuff surgery on the appellant. The appellant has since recovered, with some limitations, and has returned to work.

The appellant filed a workers' compensation claim which was ruled compensable by the Commission on November 11, 2004, for "Fracture Upper Humerus Ot.". On November, 18, 2004, following a diagnosis update filed on November 17, 2004, by Dr. O'Saile, the appellant's claim was ruled compensable for "Fracture Upper Humerus Ot" and "Nontraumacomplete Rupt Ro." On December 1, 2004, the bank, by counsel, filed a protest to the November 11, 2004, and November 18, 2004, award/orders of the Commission. On October 19, 2005, the OOJ affirmed the November 11, 2004, finding by the Commission that held the appellant's claim compensable. On January 17, 2007, the BOR reversed and vacated the OOJ's decision, thereby rejecting the appellant's claim. The BOR concluded that the appellant's injury did not occur in the course of and as a result of her employment.

On February 15, 2007, the appellant petitioned this Court for appeal from the final order of the BOR. The appellant argues that her injury occurred in the course of and as a result of her employment, while the appellee, the Office of Insurance Commission, disagrees. The appellee does not question that the appellant sustained the injury on that day, however, it does maintain that the injury did not occur as a result of and in the course of her employment. On October 30, 2008, we granted the appellant's petition for appeal.

## II.

### STANDARD OF REVIEW

This case comes before this Court as an appeal from an order of the BOR, which reversed the decisions by the OOJ and the Commission. When this Court grants an appeal from the BOR, our review of the Board's final order is guided by W.Va.Code § 23–5–15 (2003) [4], which directs that,

(b) [i]n reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]

. . . .

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a *de novo* re-weigh-

---

**3.** Magnetic Resonance Imaging (MRI) is primarily a medical imaging technique most commonly used in radiology to visualize the internal structure and function of the body.

**4.** The 2003 version of W.Va.Code § 23–5–15 applies to this case pursuant to this Court's deci-

sion in *Wampler Foods, Inc. v. Workers' Compensation Division*, 216 W.Va. 129, 602 S.E.2d 805 (2004). We note that this statute was amended in 2005; however, the subsections quoted herein were not altered.

ing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision.

In *Lovas v. Consolidation Coal Company,* 222 W.Va. 91, 95, 662 S.E.2d 645, 649 (2008), this Court stated:

In *Barnett v. State Workmen's Compensation Commissioner,* 153 W.Va. 796, 172 S.E.2d 698 (1970), this Court explained that "[w]hile the findings of fact of the [BOR] are conclusive unless they are manifestly against the weight of the evidence, the legal conclusions of the [BOR], based upon such findings, are subject to review by the courts." 153 W.Va. at 812, 172 S.E.2d at 707 (quoting *Emmel v. State Compen. Dir.,* 150 W.Va. 277, 284, 145 S.E.2d 29, 34 (1965)). Conclusions of law are subjected to *de novo* inspection. Syl. Pt. 3, *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994). "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). In syllabus point one of *Appalachian Power Company v. State Tax Department,* 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court also explained that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."

Additionally, in *Fenton Art Glass Co. v. West Virginia Office of Ins. Com'r,* 222 W.Va. 420, 427, 664 S.E.2d 761, 768 (2008), this Court stated:

Because our consideration of the issues before us necessarily requires us to consider the standard of review of the BOR, we observe that "[w]hen the [BOR] reviews a ruling from the [OOJ,] it must do so under the standard of review set out in W.Va. Code § 23–5–12(b) (1995), and failure to do so will be reversible error." Syl. Pt. 6, *Conley v. Workers' Compensation Div.,* 199 W.Va. 196, 483 S.E.2d 542 (1997).

West Virginia Code § 23–5–12(b) (1995), directs, in relevant part, that:

The [BOR] may affirm the order or decision of the [OOJ] or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the [OOJ] if the substantial rights of the petitioner or petitioners have been prejudiced because the [OOJ]'s findings are:

(1) In violation of statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the [OOJ]; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

With these standards in mind, the assigned error will be considered.

## III.

### DISCUSSION

The appellant argues that the BOR fundamentally erred in finding that her claim was not compensable due to the fact that she was injured off the premises of the bank, that it occurred during a break in which the bank had no control over her actions, and therefore, such injury did not occur in the course of and as a result of her employment. The appellant attests that her two fifteen minute breaks are paid breaks and that she was still on the clock when the injury occurred. She states that the pay policy of the bank indicates that those breaks are considered a part of the regular working hours of the bank's employees.

The appellant further contends that her actions in going across the street were taken as an accommodation to her employer, and

thus, did occur as a result of, and in the course of her employment. She points out that she works in customer service and that it is expected of an employee in her position to delay taking breaks or lunch if she is working with a customer at the time such breaks or lunch are scheduled to begin. She states that in order to accommodate the bank, employees on many days have to skip breaks or rush to get their lunches. On the day of her injury, the appellant states that the bank's failure to provide adequate staffing left her, and other employees, in the position of having to skip her break and work in order to further the business practices of the bank. Thus, she reasons that her claim should be compensable.

Conversely, the appellee maintains that the appellant's injury was sustained while she was on a break from employment, while away from and off the employer's premises, and at a location where the employer has no right or power of direction or control over the employee or the condition causing her injury. As such, the appellee contends that the appellant's injury did not occur in the course of and as a result of her employment and that the Commission and OOJ erred in finding her claim compensable.

We begin our analysis by first setting forth some basic principles of workers' compensation law. In Syllabus Point 1 of *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970), this Court held that "[i]n order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Also, it is well-established that: " 'A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else 'the causal connection between the injury and the employment.' Syllabus Point 2, *Sowder v. State Workmen's Compensation Commissioner*, 155 W.Va. 889, 189 S.E.2d 674 (1972)." Syllabus Point 1, *Myers v. State Workmen's Compensation Comm'r*, 160 W.Va. 766, 239 S.E.2d 124 (1977).

In the case at hand, this Court must consider whether an injury that occurred to the appellant while she was on a break from employment, outside of the employer's premises, and not under the control of the employer, was compensable. The injury occurred as the appellant was crossing the public street to return to her workplace with her lunch. Under West Virginia's "going and coming" rule, this Court has held that an injury or death occasioned to an employee while going to or coming from work, and which occurs while he or she is not on the premises of the employer, is not compensable. *See Brown v. City of Wheeling*, 212 W.Va. 121, 569 S.E.2d 197 (2002); *Bilchak v. State Workmen's Compensation Commissioner*, 153 W.Va. 288, 168 S.E.2d 723 (1969); *Taylor v. State Compensation Commissioner*, 116 W.Va. 13, 178 S.E. 71 (1935). As this Court recognized in *Brown*, "[u]nder normal circumstances, an employee's use of a public highway going to or coming from work is not considered to be in the course of employment. The reasoning underlying this rule is that the employee is being exposed to a risk identical to that of the general public; the risk is not imposed by the employer." *Brown*, 212 W.Va. at 126, 569 S.E.2d at 202. This Court further held in the Syllabus of *Buckland v. State Compensation Comm'r*, 115 W.Va. 323, 175 S.E. 785 (1934):

> An injury, resulting in death, received by an employee while traveling upon a public highway in the same manner and for like purposes as the general public travels such highway, and not in performance of his duties for his employer, is not an injury received in the course of employment within the meaning of the Workmen's Compensation Act and is, therefore, not compensable.

This Court has recognized, however, that there may be special circumstances that could bring such conduct within the course of an employee's employment. In Syllabus Point 4 of *Brown*, this Court further explained that " '[a]n injury incurred by a workman, in the course of his travel to his place of work and not on the premises of the employer, does not give right to participation in such [Workers' Compensation] fund, un-

less the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment, of its use by the servant in going to and returning from his work.' Syllabus Point 2, *De Constantin v. Public Service Commission*, 75 W.Va. 32, 83 S.E. 88 (1914)." "In other words, the employee may not recover workers' compensation benefits, and the employer is not immune from a negligence action." *Brown*, 212 W.Va. at 125, 569 S.E.2d at 201. Basically, "[a]n employee is entitled to compensation for an injury sustained in going to or coming from his work, only where such injury occurs within the zone of his employment, and that zone must be determined by the circumstances of the particular case presented." Syllabus Point 1, *Carper v. Workmen's Compensation Comm'r*, 121 W.Va. 1, 1 S.E.2d 165 (1939). "No definite rule can be laid down as to what is the zone of employment, and each case must be decided on its own facts and circumstances." *Id.* at 3, 1 S.E.2d at 166. Thus, this Court has recognized that special circumstances within a given claim are directly relevant to whether a given injury is compensable.

One exception to the "going and coming" rule is that if employees are required, as a condition of their employment, to routinely journey from place to place, then injuries incurred by those employees while traveling are compensable. This Court has held that "Workmen's Compensation law generally recognizes that an employee is entitled to compensation for an injury received while traveling on behalf of the employer's business." Syllabus Point 1, *Calloway v. State Workmen's Compensation Comm'r*, 165 W.Va. 432, 268 S.E.2d 132 (1980). However, when an employee engages in a "major deviation from the business purpose," such compensation can be denied. *Id.* at Syllabus Point 3.

Another exception to the "going and coming" rule that this Court has recognized is the "special errand" exception. In *Harris v. State Workmen's Compensation Comm'r*, 158 W.Va. 66, 70–71, 208 S.E.2d 291, 293–94 (1974), this Court explained:

"When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself."

*Id.* (*citing* 1 Larson Workmen's Compensation Law § 16.10 (1972)). In accord, *Courtless v. Jolliffe*, 203 W.Va. 258, 263, 507 S.E.2d 136, 141 (1998). Such a "special errand" may require the use of a highway to perform an employee's duties for the employer. For example, in Syllabus Point 1 of *Canoy v. State Compensation Comm'r*, 113 W.Va. 914, 170 S.E. 184 (1933), we stated:

Injury or death of an employee of a subscriber to the Compensation Fund occurring upon a public highway and not on the premises of the employer, gives right to participate in the fund, when "the place of injury was brought within the scope of employment by an express or implied requirement of the contract of employment, of its use by the servant in going to and returning from work."

In the case *sub judice*, the appellant claims that her injury occurred as a result of and in the course of her employment as a loan clerk at the bank, however, she does not direct us to any legal or factual support for such a conclusion. She does not contend that she was running a "special errand" for her employer nor does she contend that she was traveling across the street to pick up her lunch on behalf of, or at the direction of, her employer. In fact, her testimony during two separate depositions, on January 10, 2005, and on July 25, 2005, establishes an opposite conclusion.

During the January 10, 2005, deposition, the appellant testified she fell because of uneven pavement on a public street, not owned or controlled by the bank, and at a time when she was on a break from employment. She further testified that she was not conducting business for the bank at the time of the injury as she had walked across the street to pick up her lunch for the day.

Equally important, she testified that the bank did not have *any* control over what she could do, or where she could go, during her break. The following colloquy occurred at that deposition:

Q. How did you get hurt on September 3, 2004?

A. I took a break and went to pick up my lunch. And as I was coming back from picking up my lunch, I fell and fell face down on the street at Federal Street.

Q. Was this a lunch break or just a regular break?

A. It was a break. See, I didn't have my 15–minute break that morning, so I had taken it to pick up my lunch.

Q. How long was the break?

A. It was a 15–minute break.

Q. And where was your lunch that you were going to pick up?

A. It was at the Manor Market right across the street.

Q. During this 15–minute break that you were on, did the bank control what you could do?

A. To my knowledge, no.

. . . .

Q. Were you doing any bank business when you fell?

A. No, I was picking up lunch.

. . . .

Q. What caused you to fall?

A. Well, I think it was like uneven pavement.

Q. Now, for the sake of whoever is reading this and deciding this, the bank doesn't control that Federal Street, does it?

A. Not to my knowledge.

Q. It's a public street that the public uses?

A. Right.

Moreover, during her July 25, 2005, supplemental deposition, the appellant responded to questions from her attorney as follows:

Q. And you fell coming back across the street?

A. Yes, sir.

Q. Were you to the sidewalk yet, on the bank side of the street yet?

A. I was kind of like in the middle of the road.

Q. And you fell. Do you know what happened, why you fell?

A. I guess it was kind of like an uneven pavement. I don't really know. I just fell down, and just tried to get up myself.

Although the appellant argues that her only choice was to rush across the street to get lunch or not to eat, the record does not reflect that she was deprived on the subject date of her regular lunch break. In consideration of the entire record before us, there is no evidence that the appellant was doing any work for her employer in walking across the public street to pick up her lunch during her break period on the day of the accident. She was not on her employer's premises, she was not engaged in any work-related activity, she was not required or even directed by her employer to cross the street and pick up her lunch during her break, and thus, she was not exposed to a work-related risk. In fact, the appellant testified that during her fifteen minute break she could have gone anywhere she wanted. She testified that employees could go across the street, pick up pop, a muffin, their dinner, or go to pick up their kids at school during their break, as long as they were back in fifteen minutes.

In crossing the street to pick up her lunch, the appellant was exposed to the same risk as every other member of the public walking on the street that day. *See Brown, supra.* Nothing in the record supports the conclusion that there was a causal connection between the duties of the appellant's employment and her fall on the street. The appellant did not state that she missed her breaks or lunches on busy days at the bank, just that they were taken *after* she completed transactions with the particular customer she may have been assisting at that time. In other words, her breaks and lunch periods were occasionally delayed, but not cancelled.

On the day of the appellant's accident, she was using one of her two daily breaks to pick up her lunch from a private business located across the street from her place of employment. The accident occurred at 11:50 a.m.

and the appellant's scheduled lunch period was from 12:30 p.m. until 1:00 p.m. The fact that the appellant's fifteen minute break may have been delayed does not support her argument that she had to cross the street that day, at that very moment, to pick up her lunch as an accommodation of her employer. She was not asked, directed, or required to go to a location outside of the bank to pick up her lunch during her break period, nor was she running a "special errand" for her employer. It was a purely personal function, not involving her employment, and not resulting from her employment. Moreover, at the time of the appellant's accident, her scheduled lunch period was still forty minutes away. She could have waited for her lunch period and picked up a meal at that time. Or, as she testified that she did on most days, the appellant could have brought her lunch from home and eaten it in the lunch area provided by the bank on bank premises. Instead, the appellant chose to go to a location where the employer had no right or power of direction or control over her, or the condition causing the injury to her.

In consideration of all of the above, it is clear that the appellant's fall and injury did not occur in the course of or as a result of her employment. Consequently, the BOR's final order is not "in clear violation of constitutional or statutory provisions, is [not] clearly the result of erroneous conclusions of law, [and is not] so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, [that] there is insufficient support to sustain the decision." *See* W.Va.Code § 23–5–15(d) (2003). Accordingly, the BOR's final order is affirmed.

## IV.

### CONCLUSION

For the reasons set forth above, the January 17, 2007, final order of the Workers' Compensation Board of Review is affirmed.

Affirmed.