COTTON, Appellant,

v.

ADMR., BUREAU OF WORKERS' COMPENSATION, et al., Appellants.

[Cite as *Cotton v. Bur. of Workers' Comp.*, 192 Ohio App.3d 221, 2011-Ohio-382.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 24043.

Decided Jan. 28, 2011.

Casper & Casper and Megan Richards, for appellant.

Michael DeWine, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellant Bureau of Workers' Compensation.

Per Curiam.

{¶ 1} Plaintiff-appellant, Tyrone Cotton, appeals from a summary judgment rendered in favor of defendant-appellee Administrator, Bureau of Workers' Compensation ("BWC"), on Cotton's claim that he is entitled to participate in the workers' compensation fund.

{¶ 2} Cotton contends that the trial court erred in rendering summary judgment in BWC's favor, because his injuries were within the course of, and arising out of, his employment with defendant-appellee Eastway Corporation ("Eastway").[1]

{¶ 3} We conclude that the trial court erred in rendering summary judgment in favor of BWC. Whether an injury arises in the course of employment is a mixed question of law and fact, and genuine issues of material fact preclude summary judgment for either party in the case before us. Ohio allows workers' compensation benefits where an employer's company policy obliges employees to help stranded motorists, where an employer allows employees to go to the aid of fellow employees, or where an employee is injured by horseplay commonly carried on by employees with the knowledge and consent or acquiescence of the employer. In the case before us, there is no evidence that Cotton's actions in tipping a vending machine were taken at Eastway's insistence or permission or with Eastway's knowledge and acquiescence. However, Cotton's actions were not done for the purpose of "horseplay" and were not the result of a frolic and detour. Cotton was not on break at the time and was attempting to aid a fellow employee in a situation that a reasonable fact-finder could conclude was related to his janitorial duties. Summary judgment, therefore, should not have been rendered for either side. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

## I

{¶ 4} Tyrone Cotton was injured in May 2006, while working as a janitorial supervisor for Eastway. On the day of his accident, Cotton arrived at work and started to work in the break room, as he normally did. His job was to clean the break room, dump the trash, wipe tables, and check the restrooms to make sure they were adequately stocked and the toilets were not either stopped-up or overflowing. Cotton also did favors at work that were not noted as janitorial duties in his job description. These favors included moving filing cabinets, hanging pictures, and doing other jobs that satisfied the "customers" and made

---

1. Eastway did not participate in the trial court proceedings and has not filed an appellate brief.

everyone happy. Cotton described the customers as the staff people and the clients who came to Eastway. His job duties did not entail any work or maintenance on the vending machines.

{¶ 5} After Cotton began working in the break area, an Eastway case-worker, Donna Yount, asked Cotton to help retrieve some potato chips that had gotten stuck in the vending machine. As Cotton and a security guard pushed up on the machine, Cotton heard a pop in the back of his foot, which felt as though someone had kicked him. He and the guard tilted the machine, and the chips fell down. Cotton was able to walk on his foot. After leaving the break area, however, Cotton had to call his supervisor to take him home. Cotton exchanged his tennis shoe for a boot and returned to work. After trying to treat the injury himself for about four weeks, Cotton eventually could not walk at all and underwent surgery for a ruptured Achilles tendon.

{¶ 6} Cotton's claim was initially allowed by a BWC hearing officer, but Eastway appealed. A staff hearing officer denied the claim, and Cotton then appealed to the Industrial Commission, which filed an order refusing to hear the appeal. Cotton subsequently appealed to the common pleas court, but dismissed his appeal without prejudice. Cotton refiled his appeal in April 2009. Ultimately, the BWC filed a motion for summary judgment, claiming that Cotton was not acting in the course of his employment when he was injured.[2] The trial court agreed and rendered summary judgment in favor of the BWC.

{¶ 7} Cotton appeals from the judgment of the trial court.

## II

{¶ 8} Cotton's sole assignment of error is as follows:

{¶ 9} "The trial court erred in granting summary judgment in favor of defendant/appellee, as the injuries sustained by the plaintiff/appellant were within the course of and arising out of his employment and therefore plaintiff/appellant should be allowed to participate in the Ohio Workers' Compensation Fund subject to R.C. 4123 et seq. (Ohio Workers' Compensation Statute)."

{¶ 10} Cotton contends that at the time of his injury, he was engaged in an activity that is logically related to his employment as a janitor supervisor. The BWC maintains that there is no association between Cotton's janitorial duties and tipping a vending machine to retrieve a stuck bag of potato chips.

{¶ 11} "We review decisions granting summary judgment de novo, which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16. The

---

2. Cotton, also, moved for summary judgment. His motion was overruled.

standard applied in the trial court is that summary judgment may be granted to the moving party "pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers Metro-Parks* (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422.

{¶ 12} The issue in the case before us is whether Cotton's injury was sustained in the course of his employment as a janitor. According to the Supreme Court of Ohio:

{¶ 13} " 'An injury sustained by an employee is compensable under the Workers' Compensation Act only if it was "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C); R.C. 4123.54; *Fassig v. State, ex rel. Turner* (1917), 95 Ohio St. 232[, 116 N.E. 104].

{¶ 14} " 'The test of the right to participate in the Workers' Compensation Fund is not whether there was any fault or neglect on the part of the employer or his employees, but whether a "causal connection" existed between an employee's injury and his employment either through the activities, the conditions or the environment of the employment.' *Indus. Comm. v. Weigandt* (1921), 102 Ohio St. 1 [130 N.E. 38]; *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129 [190 N.E. 400]; *Fox v. Schiele [Indus. Comm.]* (1955), 162 Ohio St. 569 [125 N.E.2d 1]." *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 276–277, 551 N.E.2d 1271, quoting *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302–303, 15 O.O.3d 359, 401 N.E.2d 448.

{¶ 15} The coverage formula is conjunctive and requires proof that the injury was sustained both "in the course of" and "arising out of" the employment. *Fisher* at 277. "The 'in the course of' prong is construed to relate to the time, place and circumstances of the injury, while the 'arising out of' prong is interpreted as referring to a causal connection between the employment and the injury." (Citations omitted.) Id.

{¶ 16} Under the first prong, "An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." (Citation omitted.) *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 120, 689 N.E.2d 917. This is a mixed question of fact and law, and there are genuine issues regarding whether Cotton's actions as a janitorial supervisor, in assisting a fellow employee in retrieving a stuck item from a vending machine in the break room where he was performing his duties, were related to his contract for hire and were logically consistent with Eastway's

business, which includes training people with behavioral problems to function in the community.

{¶ 17} Regarding the second prong (the causal connection between injury and employment), the Supreme Court of Ohio has outlined three distinct factors to be considered, which depend on " 'the totality of the facts and circumstances surrounding the accident, including: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.' " *Fisher*, 49 Ohio St.3d at 277, 551 N.E.2d 1271, quoting *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, syllabus.

{¶ 18} Genuine issues of material fact also exist with regard to the second prong. The first two factors related to that prong are satisfied, because Cotton was injured at his place of employment, in an area (the break room) over which his employer had control. The issue regarding the third prong is whether Cotton's employer received any benefit from Cotton's presence at the scene of the accident. The BWC contends that no benefit existed, because tipping the vending machine was not an ordinary risk that Cotton experienced in performing his job duties. In particular, the BWC relies on *Carrick v. Riser Foods, Inc.* (1996), 115 Ohio App.3d 573, 685 N.E.2d 1261, where coverage was denied.

{¶ 19} In *Carrick*, an employee attempted to purchase a soda from a vending machine on the employer's premises. The employee was on a break, and the soda can became stuck. In order to dislodge the soda, the employee tipped the machine, which fell on his leg and caused a fracture. Id. at 575. In evaluating the claim, the Eighth District Court of Appeals noted, "As a logical result of the principle that an employer is not an absolute insurer of its employees' safety, injuries that result from an employee's misconduct or deviant behavior are not compensable, as the conduct falls outside the scope of employment." (Citation omitted.) Id. at 577. The Eighth District Court of Appeals concluded:

{¶ 20} "In applying the foregoing law regarding the element 'in the course of' to the facts before this court, we analogize appellant's act of rocking the soda machine to horseplay. The hazard created by appellant's tipping the soda machine was not a hazard incident to the performance of his duties as a stocker. Appellant thus failed to produce any evidence to demonstrate any association between his employment and the circumstances of the injury as is required by the 'in the course of employment' portion of the coverage formula." Id. at 577–578.

{¶ 21} Cotton attempts to distinguish *Carrick* by noting that the vending machine in *Carrick* had a sign indicating that it was dangerous to rock the

machine. The employee in *Carrick* also disregarded a company procedure allowing employees to obtain reimbursement for items that were not properly dispensed. Cotton notes that these facts are not present in the case before us. Cotton further stresses that he was not on a personal break and was simply trying to help a co-worker. And finally, Cotton points out that he regularly pushed desks, bookshelves, and other furniture incident to his employment.

{¶ 22} These points distinguish the case before us from *Carrick* and create genuine issues of material fact concerning whether Cotton's presence at the scene created a benefit to his employer.

{¶ 23} Cotton argues that aiding a co-worker with the vending machine "benefitted" his employer, because it improved employee relations. As support for this assertion, Cotton cites various cases that have allowed recovery for injuries sustained during social outings and for activities that are not, strictly speaking, part of an employee's duties. For example, in *Hirschle v. Mabe*, Montgomery App. Nos. 22954 and 22975, 2009-Ohio-1949, 2009 WL 1114267, we affirmed a judgment approving workers' compensation benefits where the employee was injured on her day off when she came to work to collect her paycheck. We noted that the employer gave its employees the option of picking up their checks and thus made the trip part of the contractual relationship between the employer and employee. Id. at ¶ 13–15. We additionally stated:

{¶ 24} "An employer paying for services rendered and an employee obtaining due payment are activities that concern duties and rights fundamental to the employment contract. They are the equivalent of an employee performing her duty to work and an employer obtaining the right to her services. It is clear that an injury suffered in an employer's parking lot after an employee finishes performing her work duties at the place of employment generally is compensable. * * * This conclusion would likely be the same were an employer to give an employee the choice of working one of three shifts by which to fulfill her duty to work. The injury would be compensable regardless of which shift the employee was leaving. Likewise, therefore, when an employer allows an employee the choice to have it fulfill its duty by picking up her paycheck on premises, an injury suffered in an employer's parking lot after the employer finishes performing its duty ought to be compensable." Id. at ¶ 36.

{¶ 25} Similarly, in another case cited by Cotton, the Supreme Court of Ohio held that meals furnished by an employer as part of the contract of hire bore a causal relationship to the employee's injury from ptomaine poisoning. *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 698, 36 O.O. 282, 76 N.E.2d 892, overruled on other grounds, *Johnson v. Indus. Comm.* (1965), 164 Ohio St. 297, 58 O.O. 90, 130 N.E.2d 807, paragraph four of the syllabus (the holding in *Johnson* being that "injury" does not include a disease).

{¶ 26} The situations in *Hirschle* and *Sebek* differ somewhat from the case before us. There is no evidence that tipping the vending machine was a specific part of the employment contract. On the other hand, a reasonable jury could conclude that an employee hired to perform janitorial services is expected by his employer to assist other employees with problems they encounter in the workplace, especially in areas in which the janitorial employee regularly performs janitorial services. Therefore, we do not conclude, as a matter of law, that Cotton's actions were within the scope of his employment. Genuine issues of material fact exist and must be resolved at trial.

{¶ 27} Cotton also cites two out-of-state cases that have considered workers' compensation recovery where employees were injured after having attempted to retrieve products from vending machines. The first case involves an employee who had injured his foot while dislodging a candy bar from a vending machine during an unpaid lunch break. *Washington Group Internatl. v. Barela* (2008), 218 Or.App. 541, 180 P.3d 107, 108. The workers' compensation board awarded benefits to the employee, and rejected the employer's affirmative defense, which was based on a statutory provision that exempted recreational or social activities performed primarily for the worker's pleasure from the definition of "compensable injury." Id. at 109.

{¶ 28} Contrary to Cotton's assertion in his brief, the court of appeals did not find in *Washington Group* that the employee's activity was compensable. The court of appeals also did not conclude that because there was no personal, recreational, or social value to the employee's actions, the injury had occurred while the employee was working.

{¶ 29} To the contrary, the court of appeals concluded in *Washington Group* that the workers' compensation board had failed to apply the correct legal standard. Id. at 110. The court held that the board failed to consider whether the injury had occurred while the employee was engaged in a social, as opposed to a recreational, activity. Id. In this regard, the court observed that the employee's lack of personal gain did not necessarily mean that the activity was not social. The court commented that the employee's injury occurred after "toiling" on behalf of his fellow employee and while the injured employee was on break and not working. Id. The court noted also that the board had failed to refer to any work-related reason for the injury. Id. Due to the board's failure to apply the correct legal standards, the court of appeals reversed the award of benefits and remanded the matter to the board for further consideration. Id. Accordingly, *Washington Group* does not provide a basis for awarding benefits to Cotton.

{¶ 30} The second out-of-state case cited by Cotton is *Circuit City Stores, Inc. v. Illinois Workers' Comp. Comm.* (2009), 391 Ill.App.3d 913, 330 Ill.Dec. 961, 909

N.E.2d 983. In *Circuit City*, an employee fell and fractured his hip while attempting to help a co-worker retrieve a bag of potato chips that had gotten stuck in a vending machine on the employer's premises. The commission ruled in favor of the employee, but the trial court reversed. In considering an appeal from the trial court decision, the court of appeals held that the commission's finding that the injury arose from employment was not against the manifest weight of the evidence. Id., 391 Ill.App.3d 913, 330 Ill.Dec. 961, 909 N.E.2d at 990–991. The court of appeals noted that the employer had provided the vending machine for employee use, and the machine had a defect, because three employees testified to having had problems with products that became stuck. The court of appeals further observed that the defect precipitated the injury by requiring the need to dislodge the chips. Id. Accordingly, the court of appeals concluded: "Under these circumstances, a rational trier of fact could have found that the injury originated in a risk incidental to his employment—thus creating the requisite causal connection." Id., 391 Ill.App.3d 913, 330 Ill.Dec. 961, 909 N.E.2d at 991.

{¶ 31} Because the injury "arose" from employment, the court of appeals then considered whether the employee was acting in the course of employment. In this regard, the court applied the "Good Samaritan" doctrine, which had been used in previous cases in Illinois. The "Good Samaritan" doctrine provides that "when an employee leaves his or her work duties to render aid to a third party, the 'in the course of' determination hinges on whether the employee's departure was reasonably foreseeable." Id., 391 Ill.App.3d 913, 330 Ill.Dec. 961, 909 N.E.2d at 992. Applying this doctrine, the court of appeals concluded that the employee's conduct in coming to the aid of his co-worker was reasonably foreseeable. The court of appeals stated:

{¶ 32} "In each of the above-cited cases, the cause for rendering aid was admittedly more urgent than in the instant case. However, none of those cases involved a request for assistance by a coworker, let alone a coworker stationed in the claimant's own department. What the instant case lacks in urgency (urgency being just one possible indicator of foreseeability), it makes up for in collegiality. There is no question that the vending machine was provided for the use and comfort of Circuit City's employees and that products were known to get stuck in the machine. Ritter's testimony established such knowledge at the management level. Moreover, the record contains evidence that employees shook the machine to dislodge products. Dwyer testified to occasions where he and other employees had done so. Even Hubner personally shook the machine before seeking help from Dwyer. When questioned in this regard, she testified: 'Logically, in my mind, something was stuck right there, so I shook it a little bit to try to shake it

loose.' She agreed that shaking the machine was a 'first logical reaction to get the product.'

{¶ 33} "In light of this evidence, it was reasonably foreseeable that an employee might ask a coworker for assistance to dislodge a product from the machine. It was also reasonably foreseeable that the coworker would come to the aid of a fellow employee. * * * The remaining question, then, is whether Dwyer's manner of rendering aid crossed the line of foreseeability and thus took him outside the scope of his employment." Id.

{¶ 34} The court of appeals concluded that the employee's actions in butting the machine with his shoulder did not cross the line of foreseeability so as to take him out of the scope of his employment. Id., 330 Ill.Dec. 961, 909 N.E.2d at 993. This holding is an extension of a prior decision of the Illinois Supreme Court in *Ace Pest Control, Inc. v. Indus. Comm.* (1965), 32 Ill.2d 386, 205 N.E.2d 453. In *Ace Pest Control*, the Illinois Supreme Court held that an employee who was killed when he stopped to aid a stranded motorist was acting within the course of his employment, because his employer's "intended purpose of permitting such 'good samaritan' acts by employees driving trucks characterized as 'moving billboards' was to obtain good will." 205 N.E.2d at 455.

{¶ 35} *Circuit City*'s discussion of foreseeability is logical, but we are not prepared to conclude, as a matter of law, that Cotton's actions were within the scope of his employment. We conclude that this is a mixed question of law and fact, with neither party being entitled to summary judgment on the record before us.

{¶ 36} Ohio has allowed workers' compensation benefits where an employer's "company policy" obliges employees to help stranded motorists, where an employer has permitted employees to go to the aid of a fellow employee, or where an employee " 'is injured by horseplay commonly carried on by the employees with the knowledge and consent or acquiescence of the employer.' " *Kelley v. Ryan*, Warren App. No. CA2009–07–104, 2010-Ohio-1514, 2010 WL 1268160, ¶ 8 (permitting recovery of benefits where the employee was injured at a company-sponsored event, and the employee in charge of the event instigated and participated in horseplay that caused the injury) quoting *Indus. Comm. v. Bankes* (1934), 127 Ohio St. 517, 522, 189 N.E. 437. See *Townsend v. Mayfield* (1992), 82 Ohio App.3d 457, 459, 612 N.E.2d 742 (allowing benefits where company policy obligated employees to help stranded motorists), and *Johnson ex rel. Johnson v. Salvation Army*, Montgomery App. No. 19438, 2003-Ohio-457, 2003 WL 203581, ¶ 9 and 21 (rejecting employee's claim for intentional tort, and noting that workers' compensation benefits had been allowed to employee, who was injured while driving a golf cart with his employer's permission, in order to rescue other employees whose golf cart had gotten stuck in mud).

{¶ 37} In the case before us, there is no evidence that Cotton's actions were taken at his employer's insistence or permission, or with the employer's knowledge and acquiescence. However, Cotton's actions were not done for the purpose of "horseplay" and were not the result of a frolic and detour. Cotton was not on break at the time and was attempting to aid a fellow employee in a situation that a reasonable fact-finder could conclude was related to his janitorial duties. Accordingly, the trial court erred in rending summary judgment in favor of the BWC.

{¶ 38} Cotton's sole assignment of error is sustained.

## III

{¶ 39} Cotton's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

GRADY, P.J., and FAIN and FROELICH, JJ., concur.