IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

**FILED**

**October 4, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 11-1382

GEORGETTE A. MORTON,
Claimant Below, Petitioner

v.

WEST VIRGINIA OFFICE OF INSURANCE COMMISSIONER and
SENECA HEALTH SERVICES, INC.,
Respondents

Appeal from the Workers' Compensation Board of Review
Board of Review No. 2045565
Claim No. 2011008468

AFFIRMED

Submitted:  September 24, 2013
Filed:  October 4, 2013

Reginald D. Henry, Esq.
Beckley, West Virginia
Attorney for Petitioner

Marion E. Ray, Esq.
BOWLES RICE MCDAVID GRAFF &
LOVE LLP
Charleston, West Virginia
Attorney for Respondent Seneca Health
Services, Inc.

The Opinion of the Court was delivered PER CURIAM.

JUSTICE DAVIS dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "'In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment.'   Syllabus Point 1, *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970)." Syl. Pt. 1, *Williby v. W. Va. Office of the Ins. Comm'r*, 224 W. Va. 358, 686 S.E.2d 9 (2009).

2.      "In determining whether an injury resulted from claimant's employment, a causal connection between the injury and employment must be shown to have existed."  Syl. Pt. 3, *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 145 S.E.2d 29 (1965).

3.      "Whether an injury occurs . . . resulting from the employment so as to be compensable under the workmen's compensation act depends upon the particular facts in each case."  Syl. Pt. 2, in part, *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 145 S.E.2d 29 (1965).

Per Curiam:

Petitioner Georgette Morton (hereinafter "petitioner") appeals the September 14, 2011, order of the Workers' Compensation Board of Review ("BOR"). In that order, the BOR affirmed the Office of Judges' ("OOJ") decision which affirmed the claims administrator's rejection of Ms. Morton's claim because her injury was not attributable to an injury or disease received "in the course of and resulting from" her employment as required by West Virginia Code § 23-4-1(a) (2008). Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the BOR's decision was neither in clear violation of any constitutional or statutory provision, the result of erroneous conclusions of law, nor based upon a material misstatement or mischaracterization of the evidentiary record; therefore, we affirm the BOR's order.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is employed by respondent Seneca Health Services, Inc. (hereinafter "Seneca") as a secretary.[1] On September 13, 2010, petitioner injured her

---

[1] This job title is derived from the job description made part of the appendix record. In her testimony, however, petitioner insisted that she is referred to as "support staff" and not called or designated a "secretary," although she conceded that she provided secretarial or clerical functions as part of her duties. The "purpose" of her job as set forth in the job description is: "[p]rovide secretarial, reception and data entry functions necessary for accurate processing of clinical and administrative data. Provide support staff functions which result in a positive and professional representation of Seneca." The

1

right wrist and shoulder while assisting a Seneca contract employee lift a box of maternity clothes which had been left in petitioner's office. The box of clothes had apparently been loaned by the contract employee to another employee, who returned the clothes by leaving the box in petitioner's office for the contract employee to pick up. The contract employee, who did not work in the office with petitioner, asked petitioner for help in lifting and transporting the box to her vehicle. Petitioner agreed and, upon lifting the box, lost her balance and fell backwards, injuring her right wrist and shoulder.

The claims administrator denied the claim as not being received "in the course of and resulting from" petitioner's employment. Upon appeal to the OOJ, petitioner argued that, as "support staff," her duties included assisting staff members in any tasks with which they required or requested assistance and she perceived no limitations to her duties in that regard. Petitioner conceded that the box was wholly unrelated to Seneca's business, that the contract worker was not her supervisor and had never given her orders or assignments previously, and that the employer was not at fault for her injury. Petitioner argued simply that acquiescing to any request for assistance by another employee falls within the scope of her job duties and that the employer benefits by having employees who "work collaboratively and cooperatively with one another."

Affirming the claims administrator's denial of the claim, the OOJ found that the employer derived no "special benefit" from the removal of the box from the

"essential functions" of the job as enumerated by Seneca are entirely clerical and include "[o]ther duties as assigned by *supervisor*." (emphasis added).

premises and that moving the box was "a voluntary act on the part of the claimant to assist a coworker in a personal errand." The OOJ's decision "[b]orrow[ed] from the philosophy" of *Williby v. West Virginia Office of the Insurance Commissioner*, 224 W. Va. 358, 686 S.E.2d 9 (2009), finding that there was no "expressed or implied requirement that the claimant assist her coworkers in such activities of personal convenience notwithstanding the claimant's mistaken perception of her job responsibility." The OOJ further found that "there are always logical limits to what the claimant's job responsibilities were with regard to assisting coworkers. To the extent that she was assisting a coworker in a purely personal matter . . . the employer derived no benefit from the activity[.]" The BOR affirmed the OOJ's decision by order dated September 14, 2011, from which order petitioner now appeals.

## II. STANDARD OF REVIEW

With respect to this Court's standard of review of a decision of the BOR, West Virginia Code § 23-5-15(c) (2005) provides, in pertinent part:

> If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

3

However, as recognized in *Justice v. West Virginia Office of the Insurance Commission*, 230 W.Va. 80, 83, 736 S.E.2d 80, 83 (2012), "we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Workers' Compensation Appeal Board. With the cessation of the Workers' Compensation Commission ("Commission"), the appeals to this judicial body are now taken from the Board of Review." (citations omitted). Under these intersecting standards, as pertains to the issue presented herein, we turn to the parties' arguments.

## III. DISCUSSION

The issue presented in this case is straightforward. Petitioner contends that the BOR erred in finding that the injury sustained while assisting her co-worker in lifting the box of maternity clothes which was located in petitioner's office was not "in the course of and resulting from" her employment. She argues that although her primary duties were clerical in nature, her formal designation as "support staff" effectively required her to assist co-workers with any task with which they requested assistance. She argues that the employer received a tangible benefit through the employees working cooperatively and collegially with one another, which entailed accommodating a reasonable request for assistance. Seneca counters that it is undisputed that petitioner's job title and outlined duties in no way encompass assisting employees with lifting items, much less items of a wholly personal, non-work-related nature; therefore, her injury was not "in the course of and resulting from" her employment. Seneca further contends that it

4

is simply illogical for petitioner to suggest that she perceived no limitations to her purported obligation to assist co-workers as part of her job duties.

As to the elements which must be proven to establish compensability, this Court has previously recognized that

> "[i]n order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syllabus Point 1, *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970).

Syl. Pt. 1, *Williby,* 224 W. Va. 358, 686 S.E.2d 9. Importantly, "[t]he two phrases, 'in the course of' and 'resulting from' are not synonymous and both elements must concur in order to make a claim compensable." *Emmel v. State Comp. Dir.,* 150 W. Va. 277, 281, 145 S.E.2d 29, 32 (1965). The distinction between the two phrases has been described as follows: "The task of construction is made easier by breaking the phrase 'in half, with the "arising out of" [or "resulting from"] portion construed to refer to causal origin, and the "course of employment" portion to the time, place, and circumstances of the accident in relation to the employment.'" *Coleman v. Cycle Transformer Corp.*, 520 A.2d 1341, 1343 (N. J. 1986) (quoting 1A Larson, *Workmen's Compensation Law*, § 6.10 (1985)). With respect to the requirement that an injury "result[] from" employment, this Court has held: "In determining whether an injury resulted from claimant's employment, a causal connection between the injury and employment must be shown to have existed." Syl. Pt. 3, *Emmel,* 150 W. Va. 277, 145 S.E.2d 29.

5

In the instant case, there is no question that petitioner's injury occurred in the course of employment in terms of time, place, and circumstances; therefore, the "course of employment" prong is easily satisfied. Petitioner was on Seneca's premises, during her regular work hours, ostensibly tending to her duties at the time the request for assistance in lifting the box was made. The dispute herein concerns whether her injury was "resulting from," that is, causally related to her employment: As well-demonstrated by the case at bar, "[w]hether an injury occurs . . . resulting from the employment so as to be compensable under the workmen's compensation act depends upon the particular facts in each case." Syl. Pt. 2, in part, *Id.*

With regard to our existing jurisprudence, *Emmel* is the most factually analogous case inasmuch as it deals with an on-premises injury occasioned by a "purely personal" activity, but suffers from some stark dissimilarities. In *Emmel*, the claimant clocked out and availed himself of the on-premises taproom provided by the employer— which was likewise made available to the general public—where he fell and struck his head. 150 W. Va. at 279, 145 S.E.2d at 31. The employer admonished employees not to linger in the taproom more than thirty minutes; however, claimant was there well in excess of that when he fell. *Id.* Citing language from a leading treatise and without formulating a particular rule, this Court found that there was no causal connection between Emmel's injury and his employment because he was not engaged in the performance of his work duties or "something incidental thereto," nor was he acting in

6

"furtherance of the employer's business."[2] *Id.* at 282, 145 S.E.2d at 32. The Court found that Emmel's injury was merely a "vague incident of employment." *Id.* at 284, 145 S.E.2d at 34. In the instant case, petitioner was in her regular workplace during regular work hours, making *Emmel* quite distinguishable.

Even less helpful to our analysis is *Williby*, cited by the OOJ. *Williby* is a "coming and going" case involving a claimant who was injured on her way back to the office from a break. *Williby* discusses the various exceptions to the general compensability bar for injuries sustained while coming to or going from work including the "special errand" exception and the "zone of employment" concept, which deals with the *place* of the injury. 224 W. Va. at 363, 686 S.E.2d at 14. The OOJ in the instant case did in fact merely "borrow" from these concepts, as they pertain to injuries sustained off of work premises during an undisputed "break" from work and as such, are not particularly helpful to resolution of the more narrowly-focused issue of causation presented in the case *sub judice*.

---

[2] The Court cited further language from the treatise noting that a worker "'not engaged in performing the particular duties for which he was employed, or in something incidental thereto, is not in the course of his employment, even though he may be in the general sphere of it[.]'" *Emmel,* 150 W. Va. at 282, 145 S.E.2d at 32-33.

7

Although much has been written about the terms "resulting from" and "course of employment" in a general sense,[3] several treatises have crystallized the issue presented herein as being one of compensability for injuries sustained while engaged in activity, the primary purpose of which is a co-employee's personal benefit. *See* Larson, *supra,* at § 27.01[5]. To that end, the leading treatise on workers' compensation states that with regard to injuries which occur while rendering "aid" to a co-employee, "[i]f the aid takes the form of merely helping the co-employee with some matter entirely personal to the co-employee, it is outside the course of employment, unless the deviation involved is insubstantial." *Id.; see also* 82 Am.Jur.2d Workers' Compensation § 257 (2003) ("Injuries received by an employee while voluntarily engaged in some activity having no essential relation to, or connection with, the employment, and undertaken solely for the pleasure, convenience, or benefit of the employee or a third person, are ordinarily not compensable[.]"). On the other hand, it is also recognized that "an action done by an employee for the benefit of himself or herself or a third person may be so related to or connected with the employment as to make it a reasonable incident of the employment." 82 Am.Jur.2d Workers' Compensation § 257.

Most of the extra-jurisdictional cases undertaking this analysis seem to fall well to either side of this issue—either they are at least in some measure demonstrably related to the employment (e.g., injuries occasioned by work equipment, during activities

---

[3] "Few groups of statutory words in the history of law have had to bear the weight of such a mountain of interpretation as has been heaped upon this slender foundation." Larson, *supra,* at § 6.10.

which mutually and tangibly benefit the employer, etc.) or are fairly clearly outside of the employment realm (e.g., off premises, after work hours, or so far afield of duties as to bear little connection). Moreover, these cases are all heavily fact-driven and, unlike the instant case, seem to have additional facts which somewhat obviously tip the balance in favor of one outcome or the other.

Two intermediate appellate cases from Illinois and Ohio which are remarkably similar to each other present the most closely analogous scenarios to the case *sub judice*; however, both ultimately contain additional determinative facts which are largely absent in petitioner's case. In *Circuit City Stores, Inc. v. Illinois Workers' Compensation Commission*, 909 N.E.2d 983 (Ill. App. 2009), an employee was injured while helping a co-employee dislodge a snack from a vending machine on the employer's premises. In upholding the Workers' Compensation Commission's finding of compensability, the Appellate Court of Illinois held that "when an employee leaves his or her work duties to render aid to a third party, the 'in the course of' determination hinges on whether the employee's departure was reasonably foreseeable." *Id.* at 992. To that end, the court highlighted the fact that "the vending machine was provided for the use and comfort of Circuit City's employees and that products were known to get stuck in the machine." *Id.* The court further underscored the fact that the employee adduced specific evidence of management-level knowledge of the vending machine's propensity to malfunction and awareness that employees customarily shook the machine to dislodge products. *Id.* As a result of the foregoing, the court found that the Commission's

9

determination that the claim was compensable was "not against the manifest weight of the evidence." *Id*. at 993.

Similarly, but under a critically different standard of review, the Court of Appeals of Ohio found entry of summary judgment for the employer to be error in another case involving a vending machine injury. In *Cotton v. Administrator, Bureau of Workers' Compensation*, 948 N.E.2d 968 (Ohio Ct. App. 2011), the trial court found that Cotton, a janitor supervisor, was not injured in the course of his employment when he was injured while assisting a co-worker in retrieving potato chips which had gotten stuck in a vending machine. Cotton was performing his customary janitorial duties in the break room where the vending machine was located at the time of the incident and testified that in addition to his regular janitorial duties, he "regularly pushed desks, bookshelves, and other furniture" in the course of his employment. *Id*. at 973. Cotton contended that the trial court erred in its entry of summary judgment and that he was "engaged in an activity that is logically related to his employment as a janitor supervisor." *Id.* at 971. Cautioning that it was "*not prepared to conclude, as a matter of law, that Cotton's actions were within the scope of his employment*," the Court of Appeals reversed, finding that issues of fact made summary judgment inappropriate and that "a reasonable fact-finder could conclude [Cotton's injury] was related to his janitorial duties." *Id*. at 976 (emphasis added).

While these cases are factually similar to the case *sub judice* in that they involve injuries sustained by employees on work premises, during work hours, while doing a "favor" for a co-employee, both involve defective instrumentalities provided by the employer on work premises for the known use of the employees. In the case at bar, however, the instrumentality of injury—the box of maternity clothes and the function of taking them to the contract worker's car—has nothing whatsoever to do with Seneca's business or workplace, aside from the fact that the box fortuitously happened to have been left there for the convenience of the contract worker. Petitioner presented no specific evidence that her supervisor or any management-level employees of Seneca were actually even aware of the presence of the box.[4]

Insofar as the relationship of the means of injury to work duties, in *Cotton*, the employee testified that his customary duties included the type of general maintenance and custodial activities to which assisting with a malfunctioning vending machine is akin. Petitioner makes a similar, although broader, argument to that presented in *Cotton*, contending that her job duties require her general assistance with the needs of her co-workers and that she assisted in moving filing cabinets, desks, chairs, and other *office equipment*. However, when asked to specifically describe her daily duties, petitioner

---

[4] Petitioner testified very generally that her supervisor had been in her office while the box was also present.

11

testified that she performed "secretarial duties," specifically typing, answering the phone, and assisting staff members with computers and copiers.[5]

Ultimately, however, neither *Circuit City* nor *Cotton* stand for the proposition that the scenarios described therein were definitively "resulting from" employment; rather, the courts therein defer rather heavily to their applicable standard of review. In sum, what these cases actually reveal is that the determination of whether an injury sustained while assisting a co-worker with a purely personal matter is causally related to employment is an issue which is heavily fact-dependent and not easily resolved by application of any particular rule of law.[6]

---

[5] Upon brief questioning by her counsel, petitioner agreed that there had been prior occasions where she had assisted in moving "personal items of employees" and that a supervisor had observed such activity. Petitioner provided no detail whatsoever about the types of personal items, how frequently such activity occurred, under what circumstances, nor any specific incident known to or observed by her supervisor. As such, this vague and unsupported testimony adds little to our analysis and was a matter for the Administrative Law Judge to weigh and consider as to its "relevance, credibility, materiality and reliability." W. Va. Code § 23-4-1g(a) (2003).

[6] Although not argued by the parties, we note that we do not find this case amenable to analysis under the "Good Samaritan doctrine" recognized by some courts in assessing compensability of injuries sustained while rendering aid to others. In cases where this doctrine has been applied to find compensability, typically the aid rendered is of an emergent nature and the employee's "conditions of employment" positioned him or her to undertake the rescue. *See Olde South Custom Landscaping, Inc. v. Mathis,* 494 S.E.2d 14 (Ga. Ct. App. 1997); *see also Rockhaulers, Inc. v. Davis*, 554 So.2d 654 (Fla. Dist. Ct. App. 1989). Even in jurisdictions applying this doctrine, courts frequently also require the act to "at least partially benefit his employer in order for an injury to be considered incidental to or arising out of employment." *Quinney v. Md. Cas. Co.,* 347 So.2d 921, 923 (La. Ct. App. 1977); *Roberts v. Burlington Ind., Inc.*, 364 S.E.2d 417, 421 (N.C. 1988) ("An injury to an employee while he is performing acts for the benefit of

Without question, this is a marginal case in terms of compensability and reasonable minds certainly may differ. However, we can discern no particular benefit to Seneca in petitioner's admittedly kind, but purely gratuitous, gesture of assisting her co-worker with the box. We find petitioner's suggestion that helping to lift the box was beneficial to the employer because it promotes generalized teamwork and camaraderie to be unavailing and a slippery slope. Under this construct, the employer would essentially become the insurer of anyone injured on the premises, regardless of the nature of the activity giving rise to the injury, so long as an employee was assisting with the activity in an effort to be helpful and collegial. Moreover, we are unpersuaded by petitioner's suggestion that due to her purported "support staff" designation[7] she was somehow obligated to assist any employee with any task, without limitation. We agree with the BOR that an injury which occurs while gratuitously assisting a co-employee with a task of a purely personal nature, involving no instrumentalities of employment and without any alleged involvement of or benefit to the employer, does not "result[] from" employment.

Finally, we emphasize that our recognition that this is a marginal case does not permit us to simply substitute our judgment for that of the fact-finder below. We believe that to reverse the BOR would constitute a re-weighing of the evidence which is

third persons does not arise out of the employment unless the acts benefit the employer to an appreciable extent.").

[7] *See* n.1, *supra*.

13

forbidden upon review by this Court pursuant to West Virginia Code § 23-5-15(c). Moreover, West Virginia Code § 23-1-1(b) (2007) abrogated the historical "rule of liberality" and provides that "workers' compensation cases shall be decided on their merits and that a rule of 'liberal construction' based on any 'remedial' basis of workers' compensation legislation shall not affect the weighing of evidence in resolving such cases." *See Bias v. Eastern Associated Coal Corp.*, 220 W.Va. 190, 209, 640 S.E.2d 540, 559 (2006) (Davis, C.J., concurring) (recognizing statutory abrogation of rule of liberality in workers' compensation claims). More specifically, the Legislature has further indicated that with regard to the rule of liberality: "No such principle may be used in the *application of law to the facts of a case* arising out of this chapter or in determining the constitutionality of this chapter." W. Va. Code § 23-4-1g (2003) (emphasis added). As such, in light of the intensely fact-driven nature of such cases, our required deference to the fact-finder below, and the absence of an issue-determinative rule of law in this matter, we are hard-pressed to find that the BOR's determination constitutes a "clearly" erroneous conclusion of law. Further, we find no clear violation of a constitutional or statutory provision or misstatement or mischaracterization of the evidentiary record, as would be necessary for this Court to reverse the BOR's decision.

## IV. CONCLUSION

For the foregoing reasons, we affirm the September 14, 2011, order of the Board of Review.

Affirmed.