# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-559

_____

TYLER J. CARROLL,
Claimant Below, Petitioner,

v.

WEST VIRGINIA HEATING & PLUMBING COMPANY,
Employer Below, Respondent.

FILED

**May 29, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from Workers' Compensation Board of Review
(JCN: 2021022612)

REVERSED
_____

Filed:  May 29, 2024

Cynthia M. Ranson, Esq.
J. Michael Ranson, Esq.
Ranson Law Offices, PLLC
Charleston, West Virginia
Counsel for Petitioner

Charity K. Lawrence, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Respondent

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

Petitioner Tyler J. Carroll appeals the West Virginia Workers' Compensation Board of Review's ("BOR") order dated November 27, 2023, which held his claim to be not compensable. The BOR concluded, based upon this Court's prior opinion remanding the matter for further analysis, that Mr. Carroll's attempted rescue and injury resulting therefrom is not compensable under West Virginia's workers' compensation jurisprudence, even though Leonard Ernie Bragg, as Mr. Carroll's supervisor, gave implicit authorization for such action.

For the reasons discussed below, the BOR's order dated November 27, 2023, is hereby reversed and Mr. Carroll's claim shall be held compensable.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court previously remanded this case back to the BOR for a proper analysis under the applicable workers' compensation law. *See West Virginia Heating & Plumbing Co. v. Carroll*, No. 22-ICA-167, 2023 WL 3579092 (W. Va. Ct. App. May 22, 2023) ("*Carroll I*"). On remand, the BOR was tasked with considering whether any company policies or procedures existed which provide guidance to employees as to the proper conduct when confronted with an accident or other emergency while traveling for

1

work.[1] *Id.* at *8. Additionally, we ordered the BOR to consider whether statements and/or conduct of any supervisor or company agent, including but not limited to Mr. Bragg, constituted actual or implicit authorization for Mr. Carroll's actions. *Id.* Further, if such authorization occurred, then the BOR should consider whether such authorization and/or conduct is sufficient to support a finding of compensability under the existing workers' compensation framework. *Id.*[2]

Mr. Carroll, a third-year union apprentice in the Plumbers and Pipefitters Local Union #625,[3] was working for West Virginia Heating and Plumbing Company ("WVHP"), a member of the Kanawha Plumbing-Heating-Cooling Contractors Association at the time of the accident involved herein. At some point prior to May 4, 2021, Mr. Carroll along with Mr. Bragg, a union journeyman, were assigned by Mary Beth Johnson, president and owner of WVHP, to work on a project at the federal courthouse in Pittsburgh, Pennsylvania.

On May 3, 2021, Mr. Carroll and Mr. Bragg departed Charleston, West Virginia, for Pittsburgh, Pennsylvania, in a WVHP van loaded with company tools,

---

[1] This Court left the determination of allowing additional evidence up to the BOR, and based upon the record before us, the BOR permitted such additional evidence.

[2] The majority of the facts are gleaned from this Court's remanded opinion.

[3] Mr. Carroll was twenty-three years old at the time of the accident.

equipment, and materials for the project. The union agreement specifically required the transporting of company tools and equipment in a vehicle owned or leased by the company. WVHP paid for overnight accommodations in Pittsburgh for the two men, and the purchase of fuel and meals while they traveled. Mr. Carroll and Mr. Bragg performed work in Pittsburgh on May 3 and May 4, 2021.

At about 5:30 p.m. on May 4, they finished their work on the project and loaded the WVHP van with the remaining materials and equipment. At about 6:30 p.m., they departed Pittsburgh and headed south on Interstate-79 ("I-79") toward Charleston. After the two stopped in Morgantown for fuel and dinner, they continued south on I-79 to Charleston.

At around 9:05 p.m., near the Sutton exit, the two men witnessed a white pick-up truck heading northbound on I-79 lose control, cross the median, and barrel roll into the southbound lanes of I-79. Mr. Carroll, driving the van, took evasive action to successfully avoid the oncoming pickup truck. Mr. Carroll steered the van onto the right shoulder of the southbound lane, turned on the van's hazard lights, and observed that no traffic was approaching from behind. Mr. Carroll backed up the van along the shoulder to get closer to the truck.

Thereafter, Mr. Carroll and Mr. Bragg both simultaneously exited the van to render aid. Mr. Carroll rushed to the driver's door of the truck, while Mr. Bragg went to

3

the rear of the van with his cell phone flashlight engaged attempting to warn any oncoming southbound traffic. As Mr. Carroll approached the truck, he could see the driver through the windshield, the driver's head was slumped forward, and he appeared to be unconscious. Mr. Carroll tried to communicate with the driver but there was no response. Mr. Carroll attempted to open the drivers' door, but it was jammed shut.

In the meantime, a tractor-trailer approached the crash site, however, due to Mr. Bragg's flashlight warning, the truck was able to stop without hitting the disabled truck. Seconds later, another truck appeared and slowed behind the tractor-trailer. Then a small black vehicle, identified in the crash report as an uninsured 2013 Chevrolet Cruze, traveling at a high rate of speed, passed the truck and the tractor-trailer in the passing lane and struck the disabled white pick-up truck near the driver's side door where Mr. Carroll had been working to free the driver.

After the impact, Mr. Bragg looked at where Mr. Carroll had been standing, but he was no longer there. Mr. Carroll later stated that his last memory was the light of Mr. Bragg's flashlight and the sound of a tractor-trailer gearing down. Mr. Carroll's body was found lying in the median. Mr. Carroll was treated on the scene by EMS personnel and transported by helicopter to Charleston Area Medical Center.

Mr. Carroll sustained multiple fractures involving all four extremities and his skull. On May 11, 2021, Mr. Carroll underwent a below-the-knee amputation of his left

4

leg. Ultimately, it was determined that there was insufficient tissue to salvage the leg below the knee. Mr. Carroll underwent another amputation above the knee on May 14, 2021.

By order dated June 9, 2021, the claim administrator denied Mr. Carroll's application for workers' compensation benefits, stating that his injuries were not sustained in the course of and as a result of his employment. The Office of Judges ("OOJ") issued an initial order dated December 22, 2021, which reversed the claim administrator's order. After entry of the order, the OOJ notified the BOR that as a result of a computer error, two documents, a second affidavit by Mr. Bragg dated November 8, 2021, and the employer's closing argument dated November 10, 2021, were not considered by the OOJ. WVHP's counsel requested a remand and Mr. Carroll's counsel objected. On April 19, 2022, the BOR found the two documents to be necessary and remanded the claim to the OOJ. On September 12, 2022, the OOJ, after consideration of the additional evidence, again ordered the claim administrator's order be reversed and the claim be held compensable.[4]

By signed opinion dated May 22, 2023, this court remanded the matter back to the BOR. *See Carroll I.* Upon remand, the BOR was tasked with considering whether there were any company policies or procedures which provide guidance to employees as to the proper conduct when confronted with an accident or other emergency while traveling

---

[4] As noted in *Carroll I*, the OOJ order was appealed to this Court previously because the OOJ order was issued during the time period when administrative proceedings were being transferred from the OOJ to the BOR.

for work. *Id.* at * 8. Additionally, this Court ordered the BOR to consider whether the statements and/or conduct of any supervisor or company agent, including but not limited to Mr. Bragg, constituted actual or implicit authorization for Mr. Carroll to attempt to render aid. *Id.* Further, if such authorization occurred, then the BOR was to consider whether such authorization and/or conduct is sufficient to support a finding of compensability under the existing workers' compensation framework. *Id.*

By order dated November 27, 2023, the BOR concluded Mr. Bragg's actions constituted implicit authorization; however, even with such implicit authorization, Mr. Carroll failed to establish that he was injured in the course of and as a result of his employment. It is from this order that Mr. Carroll now appeals.

## II. STANDARD OF REVIEW

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1)     in violation of statutory provisions;
> (2)     in excess of the statutory authority or jurisdiction of the Board of Review;
> (3)     made upon unlawful procedures;
> (4)     affected by other error of law;

6

(5)     clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Questions of law arising in decisions issued by the Board are reviewed *de novo*. *Justice v. W. Va. Off. Ins. Comm'n*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012).

## III. DISCUSSION

On appeal, Mr. Carroll argues that the BOR was clearly wrong in concluding that his claim is not covered under workers' compensation. Mr. Carroll agrees with the BOR's finding that Mr. Bragg's conduct constituted implicit authorization for Mr. Carroll's actions. Therefore, with such a finding of implicit authorization, the BOR erred in nevertheless determining that his claim is not covered under the workers' compensation system in West Virginia.[5] We agree.

In response, WVHP argues that Mr. Carroll was injured during a deviation from his employment. Further, WVHP argues that even though that the BOR found Mr. Bragg's conduct constituted implicit authorization, such a finding is not sufficient to hold the claim compensable under the existing workers' compensation act.

---

[5] We note that on appeal, Mr. Carroll again makes arguments for the adoption of the positional risk doctrine. However, for the same reasons stated in our previous opinion dated May 22, 2023, we decline to adopt these doctrine(s).

The Supreme Court of Appeals of West Virginia ("SCAWV") has consistently held:

> In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury[;] (2) received in the course of employment[;] [a]nd (3) resulting from that employment.

Syl. Pt. 1, *Barnett v. State Workmen's Compensation Com'r.*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Also, the SCAWV has consistently held that "[t]he two phrases, 'in the course of' and 'resulting from' are not synonymous and both elements must concur in order to make a claim compensable." *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 281, 145 S.E.2d 29, 32 (1965). "The task of construction is made easier by breaking the phrase 'in half, with the "arising out of" [or "resulting from"] portion construed to refer to causal origin, and the "course of employment" portion to the time, place, and circumstances of the accident in relation to the employment.'" *Morton v. West Virginia Office of Ins. Com'r*, 231 W. Va. 719, 723, 749 S.E.2d 612, 616 (2013) (citations omitted). Further, "[i]n determining whether an injury resulted from the claimant's employment, a causal connection between the injury and employment must be shown to have existed." *Id.* (citation omitted). "Whether an injury occurs in the course of and resulting from the employment as to be compensable under the workmen's compensation act depends upon the particular facts in each case." *Emmel* at 278, 145 S.E.2d. at 30, Syl. Pt. 2.

Here, given the particular facts of this case, Mr. Carroll was injured in the course of and resulting from his employment with WVHP. Mr. Carroll and Mr. Bragg were

8

traveling back from a job site in Pittsburgh, Pennsylvania, to Charleston, West Virginia, and were still on the clock. As noted in *Carroll I*, it was previously disputed whether Mr. Carroll was still in the course of his employment while traveling back to Charleston, West Virginia; however, WVHP conceded that under the Fair Labor Standards Act, Mr. Carroll was owed compensation for his travel time. *See Carroll I*, at *4. Therefore, there is no question that Mr. Carroll was injured in the course of employment, as he was still on the clock being paid for his travel time back to Charleston. However, the question remains whether Mr. Carroll was injured as a result of his employment.

On remand, the BOR specifically found that "[t]he evidence establishes that the conduct/actions of Mr. Bragg, [Mr. Carroll's] supervisor, constitute[d] implicit authorization for [Mr. Carroll] to attempt to render aid to the injured driver on the interstate." In accord with our previous remand, the BOR was tasked with three questions to answer. First, the BOR was asked to consider whether "there were any company policies or procedures which provide guidance to employees as to the proper conduct when confronted with an accident or other emergency while traveling for work." *Carroll I*, at *8. On remand, the BOR found that based on Mr. Bragg's and Ms. Johnson's deposition testimony no such policies exist. Next, the BOR was tasked with considering "whether the statements and/or conduct of any supervisor or company agent, including but not limited to Mr. Bragg, via statement and/or actions, constitute actual or implicit authorization for Mr. Carroll to attempt to render aid." *Id.* And further, "if such authorization occurred, then

9

the [BOR] should consider whether such authorization and/or conduct is enough to support a finding of compensability...." *Id.*

As the fact finder in these matters, the BOR is in the best position to weigh the evidence presented and make a determination as to whether Mr. Bragg's conduct/actions constituted implicit authority, and such finding will not be disturbed on appeal unless clearly wrong. Here, the BOR determined the presence of such implicit authorization; nonetheless, the BOR held the claim is not compensable under existing West Virginia workers' compensation jurisprudence. We find error in such conclusion. Once the BOR found that Mr. Bragg's conduct/actions constituted implicit authorization for Mr. Carroll's actions while working for WVHP, agency principles suggest that his injuries sustained while attempting to render aid were a result of his employment.[6]

This Court is aware of the lack of case law in this State in the workers' compensation context, regarding implied authority which can bring an act within the scope

---

[6] While Mr. Bragg and Ms. Johnson both stated that they believed Mr. Bragg's actions/conduct did not constitute implicit authorization, the BOR concluded that it did. Presumably the BOR made this conclusion based on Mr. Bragg's previous deposition and the most recent one on remand. We cannot conclude that the BOR was clearly wrong in finding that Mr. Bragg's actions/conduct constituted implicit authorization for Mr. Carroll to undertake the rescue because there is an abundant amount of evidence for a finding of implicit authorization. Based on Mr. Bragg's earlier deposition, his affidavit, and his most recent deposition, the BOR was correct in finding there was implicit authorization. What can be gleaned from all the evidence is that Mr. Bragg and Mr. Carroll acted simultaneously, in concert with one another, in attempting to render aid in an accident they were the only witnesses to while traveling back from a job site.

of employment. However, the SCAWV has consistently held that "[a]n act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment." *See* Syl. Pt. 1, *Cochran v. Michaels*, 110 W. Va. 127, 157 S.E. 173 (1931). "Scope of employment" has long been considered "as a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." *Griffith v. George Transfer & Rigging, Inc.*, 157 W. Va. 316, 326, 201 S.E.2d 281, 288 (1973) (citation omitted). "[A] mere deviation or departure from the usual and ordinary course and activities of . . . employment, even to accomplish some private purpose of his own in connection with the business of his employer, does not of itself, as a matter of law, relieve the employer of liability." *Levine v. Peoples Broadcasting Corp.*, 149 W. Va. 256, 261, 140 S.E.2d 438, 442 (1965).

Specific to the workers' compensation context, it has been determined that "[i]f there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of injury is foreign." *See Archibald v. Ott*, 77 W. Va. 448, ___, 87 S.E. 791, 792 (1916). Further, "acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment." *Id.*

11

Here, the BOR found that Mr. Bragg's conduct/actions constituted implicit authority for Mr. Carroll's attempt to render aid, and it would be illogical to hold that his injuries sustained in attempting to render aid based on that implied authority are not compensable. Thus, this Court concludes that a determination regarding the scope of employment is relative to the facts of each case and that in certain cases, like this case, implicit authorization can bring an employee's acts within the scope of employment.

## IV. CONCLUSION

In the factual circumstances contained in the record, it is clear that Mr. Carroll's injuries occurred in the course of and as a result of his employment with WVHP. For the foregoing reasons, the BOR's November 27, 2023, order is reversed and Mr. Carroll's claim is to be held compensable.

Reversed.